LALANCE & GROSJEAN MFG. CO. et al. v. HABERMAN MFG. CO.

SAME v. MATTHAI et al.

(Circuit Court, S. D. New York.   March 25, 1899.)

1. PATENTS—PARTIES TO INFRINGEMENT SUIT—JOINT OWNERS—ASSIGNMENT BY ONE OWNER.

The execution of an assignment and release by one joint owner of his right to damages from an infringer does not destroy his co-owner's right to recover his damages from such infringer.

2. SAME—ARRANGEMENT OF PARTIES.

Where there seems to be no necessity for it, the court will not, at an early stage of the case, by an order require a party complainant, whose

interest may lie with the defendants, to become a defendant, but will leave the matter to the final hearing, and will then arrange the parties and administer relief as their respective rights may require. But if such co-complainant should undertake to delay, harass, or impede the orderly progress of the cause, the other complainant will be allowed to renew his motion to make such party a defendant.

**8. ATTORNEY AND CLIENT—WITHDRAWAL OF ATTORNEY PENDING SUIT.**

Attorneys who have withdrawn from a case, believing, in good faith, that the litigation is ended, will not, in case of its continuance, be enjoined from accepting a retainer from parties having an adverse interest to their former client, or from disclosing information acquired in their professional capacity from such client. In the absence of any showing to the contrary, the court will assume that such attorneys will observe all the obligations of honorable members of the bar.

These were two suits in equity, brought by the Lalance & Grosjean Manufacturing Company and the St. Louis Stamping Company against the Haberman Manufacturing Company and against Matthai, Ingram & Co., respectively, for alleged infringement of a patent for an invention.

Walter D. Edmonds, for plaintiff Lalance & Grosjean Mfg. Co.
Louis Marshall, for defendants.

LACOMBE, Circuit Judge. 1. These are suits in equity, against alleged infringers of a patent, for injunction and accounting. Having obtained jurisdiction of them when brought, the court does not lose such jurisdiction merely because, by reason of subsequent events, the right to relief by injunction may have been lost,—if, indeed, it has been lost. The court will hold the causes until final disposition upon accounting for damages and profits.

It is not thought that the execution of an assignment and a release by 'one of the joint owners destroys the co-owner's right to recover his damages from the defendant. To so hold would be to push the supposed analogy to the law of real property altogether too far. The kind of property which is represented by letters patent is peculiar,—indeed, sui generis; and to apply to it all the rules of the common law as to ownership of land would sometimes lead to absurdities. Unqualified assent has by no means been given to Judge Curtis' reasoning in Clum v. Brewer, 2 Curt. 506, Fed. Cas. No. 2,909; and the scrupulous care with which the supreme court has restricted its decisions in Gottfried v. Miller, 104 U. S. 521, and the Paper-Bag Cases, 105 U. S. 766, leaves the question still open, although, in this circuit, where Pitts v. Hall, 3 Blatchf. 201, Fed. Cas. No. 11,193, has laid down a different rule from that adopted by Judge Curtis, the principle of stare decisis would seem to require a denial of defendants' motion to dismiss. An interesting discussion of this important and unsettled question will be found in chapter 6 of Hall's Patent Estate, where the arguments on either side, and the entire body of federal decisions down to 1888, are most tersely and admirably set forth. Upon the precise question now presented, viz. the power of one co-owner to destroy the other's accrued right to damages, the opinion of Romilly, M. R., cited on complainants' brief (In re Horsley & Knighton's Patent, L. R. 8 Eq. 475), seems to characterize the proposition quite correctly as "a violation of the fundamental principles of law, and contrary to natural

justice." Defendants' motions to dismiss the bills of complaint are denied.

2. There seems to be no necessity for undertaking, by an order, at this stage of the case, to make the present complainant, the St. Louis Stamping Company, a defendant. The court, at final hearing, will arrange the parties and administer relief as their respective rights may require. Should the present co-complainant undertake to delay, harass, or impede the orderly progress of the cause, the motion may be renewed. With this reservation, it is now denied.

3. The former solicitors for complainant have filed all the papers, exhibits, specimens, etc., relating to these causes, with the clerk of the court. Upon giving his personal receipt for the same (said receipt containing a clause to the effect that they shall be returned to the clerk upon final termination of the causes), said papers, etc., may be delivered to the present solicitor for the prosecuting complainant. Since the St. Louis Stamping Company has no further interest—except, it may be, an adverse one—in the prosecution of the suits, its solicitors will not be allowed to inspect these papers, etc. The clerk will make a careful inventory of them.

4. Motion is also made for a direction by the court to the former solicitors of complainants to cancel and withdraw from the retainer of the National Enameling & Stamping Company, and forbidding them, during the prosecution of these suits, to accept any other retainer from said last-named company. The former solicitors have explained the awkward phraseology of their notification to the Lalance & Grosjean Company that they would have to withdraw from these litigations. The suggestion that their new retainer was conditional upon their abandonment of their former client is not supported by proof. Moreover, the court has no doubt that they acted in entire good faith, believing, as counsel for defendants has argued, that by reason of the assignments and releases of the co-complainant the litigations were terminated. As matter of fact, however, the litigations still continue; and the National Enameling & Stamping Company, including, as it does, both defendants and the "quitter" co-complainant, occupies a position distinctly hostile to the remaining complainant. Nevertheless, it may well be that the new client has, or is to have, business not germane to the issues in these litigations, with the care of which, in the interests of the Lalance & Grosjean Company, the solicitors were originally charged, and such business they can with perfect propriety conduct. It may, however, prove to be a very difficult matter to determine, as concrete questions arise, whether they can or cannot safely act for the new client,—whether in so'doing they may not unintentionally, and perhaps unconsciously, put at its service confidential information obtained from the old client by reason of the professional relationship. This court, therefore, will not direct the cancellation of the new retainer. It will assume that counsel will decide that question for themselves, in scrupulous conformity to their professional obligations. The path of unquestionable safety would be found in abstention, during the continuance of these litigations, from participation, active or merely as advisers, in any business which may, even by unkind critics, be considered germane to the issues here involved. If,

while these suits are going on, they become actively engaged, as solicitors or counsel, for an interest hostile to that of their former client, they will be likely to find their progress constantly impeded by pitfalls or quagmires into which they may stumble, or by which they may be besmirched. This court has no apprehension that any such catastrophe will befall. As was said before, the acceptance of the new retainer was in the full belief that the litigations had terminated, and the whole matter may safely be left to the solicitors themselves. The injunction prayed for, to restrain them from giving information to others than their original clients of any matter or thing by them acquired from such clients in their professional capacity, is denied. It is thought that the honorable obligation of a reputable member of the bar is a better assurance that professional secrets will be respected than would be an order of the court.