## T. C. THEATRE CORP. v. WARNER BROS. PICTURES, Inc. et al.

United States District Court
S. D. New York.
May 25, 1953.

266

Saul Friedberg, New York City, for Universal Pictures Co., Inc., et al.

N. Henry Josephs, New York City, for Thomas Turner Cooke, Alexander Kahan, and Gorfinkle & Adler.

WEINFELD, District Judge.

This is a motion by the defendant Universal Pictures Company, Inc. and Universal Film Exchanges, Inc. (both of which are hereafter referred to as Universal) for an order (1) to disqualify Thomas Turner Cooke from acting as counsel for the plaintiff and from associating himself in any capacity with any attorney for the plaintiff in the pending action as long as Universal is a party defendant; (2) to disqualify Alexander Kahan from acting as counsel for plaintiff; and (3) to disqualify Gorfinkle & Adler, the attorneys of record for the plaintiff, from continuing to represent the plaintiff in this action.

Although Cooke is not the attorney of record for the plaintiff, it is not disputed that thus far he has been actively associated with, and has played an important role in, the litigation.

The motions stem from the prior representation by Cooke of Universal in another matter.

In July 1946, Cooke was retained to represent Universal's interests in the well-known Paramount case after the Statutory Court had filed its opinion.[1] The Court

---

1. United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323. Familiarity is assumed with the various decisions of the Court in the Paramount matter—D.C., 70 F.Supp. 53 (decree, findings of fact and conclusions of law); 334 U.S. 131, 68 S.

had directed the entry of a final decree, and its formulation and that of the proposed findings of fact and conclusions of law was a matter of considerable importance to all parties in the litigation, including, of course, the defendant universal, with whom we are presently concerned. Cooke as counsel for Universal prepared its proposed findings and decree; appeared at hearings before the Statutory Court in support thereof and in opposition to those proposed by the government and some of the so-called "Big Five" defendants. Following the settlement of the findings of fact, conclusions of law and the entry of the decree, his further activities included general representation of. Universal in connection with its appeal to the Supreme Court; obtaining a stay of some of the provisions of the decree; preparation of brief and reply brief and argument before the Supreme Court of Universal's appeal.

In May 1948, the Supreme Court rendered its opinion affirming in part and reversing in part the decree of the Statutory Court. Cooke then worked on a proposed petition for rehearing and on the order of mandate.

Cooke's representation of Universal ended, according to the latter, on July 7, 1948; according to him, on or about February 14, 1951. Subsequently, on October 17, 1951, Cooke brought suit against Universal for a claimed balance due him on account of services rendered in the Paramount litigation. In that suit, which is still pending, he is represented by Mr. Kahan. The controversy as to dates is important here only to the extent that if we accept the date fixed by Cooke it narrows the gap between his former representation of Universal and his present representation of plaintiff against his former client Universal to less than a year. This gap is further narrowed when we consider that some of the complaints, admittedly prepared by Cooke, were in the process of preparation over an extended period of time.

The cases out of which this motion grew were commenced between January 23, 1952 and May 15, 1952. The motion presently relates to but one pending case.[2] The complaint alleges that the defendants, including Universal, were engaged in a nation-wide conspiracy with each other and others unreasonably to restrain trade and that they combined with affiliated circuits, large unaffiliated circuits, and locally favored exhibitors to monopolize the motion picture exhibition industry in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2. It is alleged that (1) they conspired with each other and with affiliated exhibitors to maintain a system of minimum motion picture prices; (2) they acted in concert in establishing a uniform and fixed system of runs and clearances against independent competitors of the theatre-operating defendants; (3) they entered into master agreements, or blanket deals and formula deals with circuits of theatres, and other non-competitive agreements; and (4) they discriminated, in a number of ways, against independent exhibitors.

At this point it is noted that the conspiracy so charged is substantially the same nation-wide conspiracy which was found to exist on the part of the defendants in the Paramount case. All the eight distributor-defendants therein are named as distributor-defendants in this action.

The plaintiff here alleges, more specifically, that from 1937 until the filing of the complaint, its Biltmore Theatre in Mt. Vernon, New York, was barred from receiving "feature picture benefits"; that the theatre would have been able substantially to increase its revenue had it been granted a prior run; that the unreasonable

Ct. 915, 92 L.Ed. 1260; D.C., 85 F.Supp. 881 (resettlement of decree).

2. Originally this motion was made in five different triple damage suits instituted against Universal and others, in all of which Cooke was associated as counsel with the attorneys for the plaintiffs. Pending its disposition, however, four of them were settled. The case of T. C. Theatre Corporation (hereafter called T. C.) against Warner Bros. Pictures, Inc., Universal, et al., Civil Action No. 75-213, is now before me. Other defendants have joined in the application to disqualify Cooke. Like Universal, they were defendants in the Paramount case.

restraints of trade and the attempts to monopolize are with the purpose of driving the plaintiff out of business; that as a result the plaintiff has been damaged.

Universal seeks to disqualify Cooke from now acting as attorney against it upon two separate grounds: (1) that the causes of action asserted by the plaintiff against Universal are based substantially on the identical charges made against it and the other distributor-defendants in the Paramount case, so that as present counsel for the plaintiff he will necessarily be called upon to prove against Universal, his former client, the very charges against which he had earlier defended it. Cooke's disqualification · is urged irrespective of any showing that actual confidential information relating to the case had been received by him during the former representation; (2) that, in fact, matters of confidence were disclosed to Cooke while he acted as Universal's counsel in the Paramount litigation which are related to the issues at bar; and that his current representation of the plaintiff involves, or may involve, the disclosure or use of such confidences.

Cooke disputes that the Paramount litigation and the present triple damage suit involve the same matters. As to Universal's second ground for his disqualification, he contends that he received no confidential communications from Universal, that there was no necessity therefor; that his services as appeal counsel in the Paramount case were based upon the "cold record" and that prior to his entry into the case the government had fully exposed and made publicly available all the defendants' files and records, including, of course, Universal's. Finally, no attempt is made, he says, to relate any confidential communications allegedly received by him to any use which might be made of them in T. C.'s triple damage suit against Universal and others.

A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship. Related to this principle is the rule that where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited.[3]

This salutory principle is summed up in Canon 6 of the Canons of Professional Ethics adopted by the American Bar Association,[4] which, in part, provides:

> "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

It is upon this Canon that movant places its principal reliance. I agree that if Cooke's present retainer by T. C. falls within this Canon, he is disqualified to represent it.

I am not in accord with Mr. Cooke that Universal is required to show that during the Paramount litigation it disclosed matters to him related to the instant case. Rather, I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute

---

3. Porter v. Huber, D.C., 68 F.Supp. 132; In re Maltby, 68 Ariz. 153, 202 P.2d 902; People v. Gerold, 265 Ill. 448, 107 N.E. 165; Federal Trust Co. v. Damron, 124 Neb. 655, 247 N.W. 589, 592; Watson v. Watson, 171 Misc. 175, 11 N.Y.S.2d 537.

4. The Canons of Ethics of the American Bar Association and the New York State Bar Association have been adopted by a rule of this court. General Rule 5(c).

fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

■ To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule. It would defeat an important purpose of the rule of secrecy—to encourage clients fully and freely to make known to their attorneys all facts pertinent to their cause.[5] Considerations of public policy, no less than the client's private interest, require rigid enforcement of the rule against disclosure.[6] No client should ever be concerned with the possible use against him in future litigation of what he may have revealed to his attorney. Matters disclosed by clients under the protective seal of the attorney-client relationship and intended in their defense should not be used as weapons of offense. The rule prevents a lawyer from placing himself in an anomalous position. Were he permitted to represent a client whose cause is related and adverse to that of his former client he would be called upon to decide what is confidential and what is not, and, perhaps, unintentionally to make use of confidential information received from the former client while espousing his cause. Lawyers should not put themselves in the position "where, even unconsciously, they might take, in the interests of a new client, an advantage derived or traceable to, confidences reposed under the cloak of a prior, privileged relationship."[7] In cases of this sort the Court must ask whether it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject of his subsequent representation. If so, then the relationship between the two matters is sufficiently close to bring the later representation within the prohibition of Canon 6. In the instant case I think this can be said.

It is true that in the Paramount suit the government was the plaintiff, whereas here an independent exhibitor is the plaintiff; that the exhibitor-defendants in the Paramount case did not include some of the exhibitor-defendants named here; that the Paramount case was concerned with a nation-wide conspiracy, whereas plaintiff's charges here relate mainly to its local situation. In these respects it may be acknowledged that the two actions are not identical. But a comparison of the plaintiff's complaint with the findings of fact, conclusions of law and decree in the Paramount case shows beyond peradventure that the plaintiff charges and relies upon the same conspiracy which the government established against the defendants in the Paramount case. The same distributor-defendants are named in both suits. The conspiracy charged in the two cases traverse substantially the same periods. Cooke in opposing a motion to dismiss the original complaint (drafted by him) categorically stated that the essential allegations charging a conspiracy by Universal and others against independent exhibitors, such as the present plaintiff, were pleaded in haec verba from the opinion and decree in the Paramount case. Thus, charges now made by Cooke on behalf of his present client against Universal parallel those against which he previously had defended Universal. The only difference is that plaintiff here asserts that it was the victim of the conspiracy, whereas in the government suit specific individuals were not identified.

■ A government suit, while primarily in the public interest, if successful, also accrues to the immediate benefit of those injured by the wrongful conduct. Section 5

---

5. For a historical discussion of the origin and purpose of the rule of secrecy, see 8 Wigmore § 2290.

6. There is authority that the public interest in preserving the rule of secrecy is so great that under certain circumstances the client may not waive the privilege. In re Boone, C.C., 83 F. 944, 957.

7. Watson v. Watson, 171 Misc. 175, 11 N.Y.S.2d 537, 540.

of the Clayton Act, 15 U.S.C.A., § 16, in substance specifically provides that a final decree entered in a suit brought by the United States which finds that a defendant in that suit has violated the antitrust laws, shall be prima facie evidence against such defendant in any suit brought by any other party under the antitrust laws as to all matters as to which said judgment would be an estoppel as between the parties thereto. This means that there is made available to a private litigant, such as the plaintiff in this case, as prima facie evidence, any fact which was at issue and was determined in the Paramount suit with respect to the defendants therein.[8] Thus, the decree obtained in the Paramount suit would prima facie establish that Universal and the other defendants, who are defendants here, were engaged in a nation-wide conspiracy which in enumerated ways affected the local independent exhibitor, within which group plaintiff belongs. The proof so offered, plus a showing that the conspiracy had an impact upon the plaintiff and that it suffered damage as a result, would be sufficient to establish a prima facie case.[9]

The defendants and their counsel were not unaware of the importance of the decree to possible future triple damage suits. For example, while the appeal was pending, Cooke in a letter to his client, Universal, stressed the importance of the decree, stating "* * * the decree, if unreversed, makes you prima facie guilty of violating the Sherman Act, in triple damage suits * * *."[10] Indeed, "the amount of damages that might be asked [of Universal] in triple damage suits because of the prima facie effect of the decree" and his efforts to avert the decree are underscored by Cooke as a most important factor in evaluating the substantial balance of fees for which he is now suing Universal.[11]

The findings of fact and conclusions of law which are incorporated by reference in the decree, insofar as they are pertinent to the plaintiff's situation, may also be made use of to further the attack against Cooke's former client. Cooke replies, however, that these are matters of public record, available to all.[12] Further, that his services were based upon the "cold record" on appeal and that the government's case prior to his entry into it had been drawn from Universal's files, all of which was, and is, exposed to public view.[13] Even if we were to accept Cooke's contention that his services were solely those of an appellate counsel, it does not follow that he did not receive confidences based upon the attorney-client relationship.[14] But, more important, this argument overlooks an important aspect of Cooke's representation of Universal following the original ruling by the Statutory Court. His services included the preparation, drafting, presentation and

8. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L. Ed. 534.

9. A raft of cases have followed in the wake of the Paramount decree, and over the objection of defendants named therein, the decree has repeatedly been admitted as prima facie evidence of the conspiracy in the private treble damage cases wherein they are defendants. See, e. g., Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 194 F.2d 846; J. J. Theatres, Inc. v. Twentieth Century-Fox Film Corporation, S.D.N.Y., Civ.Docket No. 49–80; Fanchon & Marco v. Paramount Pictures, D.C., 100 F.Supp. 84. Cf. Milgram v. Loew's, Inc., 3 Cir., 192 F.2d 579; Deluxe Theatre Corp. v. Balaban & Katz Corp., D.C., 95 F.Supp. 983.

10. Letter of May 1, 1947, Cooke's deposition, p. 158.

11. Cooke's deposition, pp. 92, 250, 260.

12. But Cooke advised Universal as to a letter sent by the Anti-Trust Division in February, 1947, complaining of "some practices on the part of Universal." Cooke's deposition, p. 392.

13. There are authorities which hold that this is immaterial. See United States v. Bishop, 6 Cir., 90 F.2d 65; Harvey v. Harvey, 202 Wis. 553, 231 N.W. 580.

14. Cf. Chase National Bank v. Turner, 269 N.Y. 397, 399, 199 N.E. 636, where a client who came into the jurisdiction to hear her appeal was held immune from process upon the ground that she could be of effective assistance to counsel during the course of the argument. A fortiori it must be assumed that in the preparation of an appeal the client can be of even greater assistance in discussing, dehors the record, matters relating to the claim or defense.

argument in support of the findings of fact, conclusions of law and decree proposed by Universal, as well as opposition to those offered by the government and some of the other defendants. This was no mere mechanical job of paste pot and shears. It involved the acquisition of a thorough knowledge of Universal's entire business. To this end, whatever information, whatever documents, he sought from Universal were made available to him. During the preparation of the findings and decree he was in full command of Universal's legal forces; house and general counsel looked to him for leadership and he freely consulted with them as to various aspects of Universal's activities. It was Cooke's duty to his client to know Universal's individual trade practices, its relationship to other producers and distributors, to exhibitors, its methods of operation and procedures and all other matters relevant to the decree. I am satisfied that he fully discharged this duty.

■ In sum, enough appears to show that Mr. Cooke's present representation deals with matters as to which his former client reposed confidence in him. Hence, I hold that Mr. Cooke is disqualified from acting as counsel for the plaintiff in this case in any capacity so long as Universal is a party defendant, and the motion is granted to this extent.[15] This disposition makes it unnecessary to consider the second ground for the motion to disqualify, based on Canon 37.

I am willing to assume that Cooke in undertaking to act as counsel for plaintiffs in the current triple damage suits believed that these cases did not bring him into conflict with his former representation of Universal.

■ I next consider the application made by the other defendants for the same relief. During the pendency of the current motion, Universal's co-defendants in this action, who were its co-defendants in the Paramount action, joined to obtain similar relief. No professional relationship existed between them and Cooke. They contend, however, that Cooke participated in conferences with their counsel, during the course of which various confidential matters were considered. But I am satisfied on the papers and examination of the deposition which was submitted as part of the proof before me that the nature of these conferences was not such as to involve any disclosure of confidential information. The conferences related essentially to procedural matters in connection with the pending appeal common to all the defendants. Further, with respect to at least a number of Universal's co-defendants, he took a position adverse to them on the appeal and in connection with findings, and in consequence, the relationship appears to have been a guarded rather than a confidential one. Hence, the motion is denied as to the movants other than Universal.

■ Finally, there is the application to disqualify Messrs. Kahan and Gorfinkle & Adler. Kahan, as already noted, is the attorney for Cooke in the suit to recover the balance of fees and has also been engaged as trial counsel for the plaintiff in this case. Here I will assume that confidential information material to T.C.'s case was actually imparted to Cooke during the Paramount litigation. Universal contends that it must be presumed that Cooke has passed it on to those with whom he is associated in this suit. Universal admits that there is no direct evidence that this has been done, but asserts that because Kahan is Cooke's lawyer in the fee suit, it necessarily follows that Cooke in enumerating his services to him made full disclosure of all that Universal told him.

I have fully reviewed the deposition taken by Universal of Cooke in connection with that suit and nothing therein warrants such an inference and I am unwilling to draw it upon this record.

Cooke's right to recovery of additional fees, if any, does not depend upon the disclosure of confidential communications, but, rather, upon the nature, extent and importance of the services performed by him. He could enumerate the various con-

15. That it is within the Court's power to grant this relief, see, e. g., United States v. Bishop, 6 Cir., 90 F.2d 65; General Contract Purchase Corporation v. Armour, 5 Cir., 125 F.2d 147; Brown v. Miller, 52 App.D.C. 330, 286 F. 994, 997.

ferences with his client without detailing the matters which might have been discussed. It seems to me that Kahan's representation of Cooke could be just as effective without such a disclosure. The Court is not required to indulge in any presumption that Cooke has divulged confidences reposed in him by his former clients simply because he is now engaged in a law suit with them. The presumption would be to the contrary.[16]

There is even less basis for the claim against Messrs. Gorfinkle & Adler. Movant again presses upon the Court a "presumption" that they must have retained Cooke in order to make use of confidential information he received in the course of his former employment. It is not clear why it should presume the attorneys have acted unethically. On the contrary, I would presume that Messrs. Gorfinkle & Adler had no such motivation. Cooke was probably retained for the same reason that Universal retained him in the Paramount case—because of his special experience in antitrust matters.

The motion with respect to Messrs. Kahan and Gorfinkle & Adler is denied.[17]

Settle order on notice.

---

16. Cf. Lalance & Grosjean Mfg. Co. v. Haberman Mfg. Co., C.C., 93 F. 197, 199–200.

17. Cf. Hawley v. Hawley, 72 App.D.C. 357, 114 F.2d 745, 750; Harvey v. Harvey, 202 Wis. 553, 231 N.W. 580, 583.