**Joan HULL, on behalf of herself and others similarly situated, Plaintiffs,**

v.

**CELANESE CORPORATION et al., Defendants.**

**No. 73 Civ. 3725.**

United States District Court, S. D. New York.

May 1, 1974.

Victor Rabinowitz, New York City (Rabinowitz, Boudin & Standard), New York City, for proposed intervenor, Donata Delulio.

Gilbert S. Edelson, New York City (Rosenman, Colin, Kaye, Petschek, Freund & Emil), New York City, for defendants.

OPINION AND ORDER

OWEN, District Judge.

Miss Donata Delulio, an attorney employed in the law department of defendant Celanese Corporation since 1972, claims that she has been damaged by various forms of sex discrimination by Celanese, particularly with respect to hiring, promotions and transfers, salary and raises, training and education pro-

grams, public relations and client good-will activities.[1]

■ She moves for leave to intervene in this action, commenced in 1973 by Joan Hull, an employee of Celanese Fibers Marketing Company (CFMC) a division of defendant Celanese. Plaintiff Hull, seeking class action designation, alleges that Celanese, CFMC, two officers and three directors violated Title VII of the Civil Rights Act of 1964 by discrimination in employment on the basis of sex. Miss Delulio, however, suffers from an impediment which, in my opinion, is fatal to her motion. Specifically she participated as one of a number of Celanese lawyers in an active and substantial way in early stages of the defense of this very action.[2]

The facts as to her participation are well-summarized in Miss Delulio's own words in her letter to the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York seeking guidance:

> During the six months that I worked on [the Hull] case I studied the general regulations of the Equal Employment Opportunities Commission, its procedures and the law on sex discrimination generally. I obtained specific information from the personnel department of the division concerning salaries and hiring practices. I attended on (sic) interview of the employee's superior, and attended one interview of another division employee. I participated in a conference with outside consultants hired by the corporation to prepare statistical information regarding employment within the division. I obtained inter-office memoranda and prepared a memorandum myself regarding the case.[3]

Thus, there is no question that Miss Delulio is possessed of substantial knowledge and information as to the Hull case obtained as a lawyer in defending against it.[4]

To the foregoing, Miss Delulio unequivocally states that although she and Joan Hull and other plaintiffs have become social friends and although she has had conferences with Hull's attorneys (who are now her attorneys) concerning this case,[5] she has never revealed anything learned in confidence. Giving these statements full credit, and passing the requirement that a lawyer avoid even the "appearance of impropriety" in his professional conduct[6] nevertheless, the opportunity for inadvertent disclosure is clearly ever-present.

This seems to be a case of first impression, and research has disclosed no authorities directly on point. However, Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973); Motor Mart, Inc. v. Saab Motors, Inc., 359 F. Supp. 156 (S.D.N.Y.1973) and T. C. Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265 (S.D.N.Y.1953), provide

---

1. Celanese denies this and suggests that any employment disappointment on her part is due to disappointment on its part in her performance as a lawyer. (Hill aff., April 15, 1974 pp. 1–2).

2. It would appear that Miss Delulio's work upon the Hull case terminated prior to any activity on her part to intervene therefor.

3. The Committee advised Miss Delulio in writing that in its opinion she should neither intervene in the Hull action, nor prosecute her own action.

4. Miss Delulio concedes "It is possible that I might have evidence that would be protected by the attorney-client privilege . . ." (aff., April 9, 1974, p. 3).

5. Plaintiff Hull, in her affidavit of April 8, 1974, states at p. 2:
"After [Miss Delulio] retained the Rabinowitz firm and made the decision to intervene in this action, I had closer contact with her. We have discussed the case between ourselves, amongst the other applicants for intervention and with counsel."

6. Canon 9 of the Canons of Legal Ethics. This Canon alone is, in my opinion, sufficient to require denial of this motion, but given the facts herein I need not decide on "appearances" alone.

clear and sufficient guidance mandating a denial of this motion as a matter of law. In *Emle,* the Court stated at pp. 570–571:

> Canon 4 implicitly incorporates the admonition, embodied in old Canon 6, that "The [lawyer's] obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed." Without strict enforcement of such high ethical standards, a client would hardly be inclined to discuss his problems freely and in depth with his lawyer, for he would justifiably fear that information he reveals to his lawyer on one day may be used against him on the next. A lawyer's good faith, although essential in all his professional activity, is, nevertheless, an inadequate safeguard when standing alone. Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it into a telling advantage in the subsequent litigation. . . . The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case. These considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage.

■ Further, the right to intervene is a matter addressed to the Court's sound discretion, Fed.R.Civ.P., Rule 24(b). Thus, even were the law other than I conclude it to be, I would not in my discretion permit Celanese to suffer the possibility of unintended disclosure by Miss Delulio to other plaintiffs or their joint counsel of matters learned by her in confidence while working on this case as a Celanese lawyer.

■ As her "ultimate position",[7] it is urged that Miss Delulio has a constitutionally-protected freedom of association, citing N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). This position I find to be without merit. Miss Delulio is correct to the extent that N.A.A.C.P. v. Button, did strike down certain state regulations of the practice of law in conflict with "the First Amendment as absorbed in the Fourteenth . . . ."[8] as "unduly inhibiting protected freedoms of expression and association."[9] However, N.A.A.C.P. v. Button specifically excepted from the scope of its ruling a situation in which there has been a "showing of a serious danger of professionally reprehensible conflicts of interest . . . ."[10] which situation exists here. See also California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, at p. 515,

---

7. THE COURT:
Well, Mr. Rabinowitz, . . . :
Is it your ultimate position that she has a constitutional right to associate with others to seek redress of grievances?
MR. RABINOWITZ:
Yes.
THE COURT:
And you say that I must draw, I must be the one that balances that right against the provisions binding upon her under the Canons of Ethics . . . ?
MR. RABINOWITZ:
Yes, as I see it. (Minutes of oral argument pp. 10–11)

8. 371 U.S. at p. 444

9. 371 U.S. at p. 437

10. 371 U.S. at p. 443.

92 S.Ct. 609, at p. 614, 30 L.Ed.2d 642 (1972), where the Court stated:

> First Amendment rights may not be used as means or the pretext for achieving "substantive evils" (see NAACP v. Button, 371 U.S. 415, 444 [83 S.Ct. 324, 328, 9 L.Ed.2d 405])
>
> . . .

For the foregoing reasons, both on the law and in my discretion, I deny the motion.

So ordered.