OPINION OF THE COURT
Jeffrey G. Stark, J.
On this motion by the defendant estate of Herman Weinstein to disqualify Donald M. Wolfson, Esq., as the attorney for the defendant estate of Joseph Roubicek, the moving party has established that Wolfson previously represented Herman Weinstein in the same transaction which is the subject of the present suit. Under the substantial relation test enunciated in T. C. Theatre Corp. v Warner Bros. Pictures (113 F Supp 265) and applied by the New York Court of Appeals in Cardinale v Golinello (43 NY2d 288), among other cases, disqualification would thus seem to be required. Nevertheless, the substantial relation test has recently been significantly modified in the Second Circuit. Under its more recent decisions, that court: (1) no *323 longer considers the “appearance of impropriety” as alone sufficient to warrant disqualification; (2) now deems rebut-table the presumption that an attorney received confidential communications in a prior representation, at least where the attorney only has a “peripheral” relation to the client; and (3) now requires that the issues in the prior and present representation be identical, holding insufficient a demonstration that the two “matters” are the same. Because Wolfson would not be disqualified under the Second Circuit’s new standards as applied to the facts of the present case, and because this court believes the Second Circuit’s standards will be adopted by our Court of Appeals, the motion is denied.
FACTS
The facts are not in dispute. The estate of Joseph Roubicek (by Dorothy Woolfolk) and Herman Weinstein were tenants in common of a property located in Baldwin, New York. In January, 1983, they decided to sell the property to the plaintiffs herein. Wolfson, who was then Woolfolk’s attorney, was asked by Woolfolk to draft the contract of sale for the sellers. He did so and eventually forwarded the contract to Herman Weinstein for signature. At all times, Weinstein was a Florida resident and Wolfson claims, and it is not denied, that Wolfson never had any conversation with Herman Weinstein or received any correspondence from him. Wolfson did send three letters to Weinstein transmitting for signature, respectively, two contracts, two deeds, and an affidavit that Weinstein was not the party against whom a certain judgment had been obtained. The letters were dated January 18, February 10 and February 16. The contract of sale was executed by all parties sometime after February 16.
Herman Weinstein died on February 27 at the age of 80. A few days thereafter, Ruth Weinstein, the representative of his estate, visited the Baldwin premises, which were then being leased to the plaintiffs, and communicated her unhappiness with the terms of the contract of sale. On March 3, Wolfson, having learned of this, wrote to Ruth on behalf of Woolfolk stating that if the Weinstein estate should seek to repudiate the contract, Woolfolk would *324 expect to be indemnified by the estate for her legal expenses.
On March 22, Florida counsel wrote to Wolfson notifying him they had been retained to represent the estate of Herman Weinstein and on March 29, again wrote Wolfson offering on behalf of the estate “to purchase your client’s interest [in the Baldwin premises] for cash.” Florida counsel asked Wolfson’s advice “if there is a possibility that the contract may be avoided and, if so, would your client be willing to sell on all cash terms?”
Thereafter, negotiations with the plaintiffs appeared to be fruitful and the plaintiffs’ title company was asked to review the closing papers. The title company advised that it would be necessary to obtain ancillary letters for Ruth Weinstein in New York with respect to the transaction. On or before May 3, Ruth’s Florida counsel requested Wolfson to obtain these letters. In a letter dated May 3, Florida counsel forwarded to Wolfson certified copies of the Florida letters of administration and noted “that we should be able to schedule a closing in this matter in the very near future.” The letter also recognized Wolfson’s claim against Ruth for half of his $2,500 attorney’s fee for the closing. By retainer letter dated May 12, Ruth retained Wolfson “[f]or the purposes of this [ancillary probate] proceeding”, and also specifically agreed to pay Wolfson $1,250 for his “representation at the contract and closing.”
Wolfson obtained the letters for Ruth, after obtaining from her Florida counsel various affidavits and petitions containing her signature, all with the purpose of closing the contract with plaintiffs. Nevertheless, on June 17, Ruth’s Florida attorneys wrote to plaintiffs’ counsel stating that “Ruth Weinstein now advises that she had obtained medical testimony to the effect that her husband did not understand the consequences of his actions at the time of the signing of the Contract for Sale and Purchase. Accordingly, she does not wish to complete the Closing on any basis other than an ‘all cash deal.’ ”
On or about July 5, the instant action for specific performance was instituted. In her answer to the complaint, Dorothy Woolfolk cross-claimed against the estate of Herman Weinstein for indemnity plus $25,000 damages in the *325 event plaintiffs recovered a judgment. In her cross claim, Woolfolk charged that she had been prepared to close on the contract at all times but that the estate has “unjustifiabl[y]” refused to do so.
The estate of Herman Weinstein has now moved to disqualify Wolfson as Woolfolk’s attorney on the ground Wolfson previously represented both Weinsteins.
DISCUSSION
On this motion, the Weinstein estate relies on cases such as Cardinale v Golinello (43 NY2d 288, supra), which stand for the proposition that an attorney may not take a case against a former client “in matters related to the subject matter of [that client’s] representation”, and that the appearance of impropriety in such cases requires the attorney’s disqualification (43 NY2d, at pp 295-296). (See, also, People v Shinkle, 51 NY2d 417, 420 [where defendant’s previous attorney joined prosecutor’s office and was chief assistant during defendant’s trial, there was an “unmistakable appearance of impropriety * * * [and] the continuing opportunity for abuse of confidences”]); Rotante v Lawrence Hosp., 46 AD2d 199, 200 [where defendant’s counsel joins office of plaintiff, even though he has no continuing connection with defendant’s action, “both the possibility of conflict of interest and the appearance of it are too strong to ignore”]); Edelman v Levy, 42 AD2d 758 [where member of defendant’s law firm joined plaintiff’s law firm, plaintiff’s attorneys must be disqualified even though the attorney in question may not have had any connection with the case either in his former, or present, partnership. “An attorney must avoid not only the fact, but even the appearance, of representing conflicting interests”]; see, also, Drinker, Legal Ethics, p 112 [“When the interests of clients diverge and become antagonistic, their lawyer must be absolutely impartial between them, which, unless they both or all desire him to represent them both or all, usually means that he may represent none of them”]; id., p 113 [“A lawyer may not accept employment to attack the validity of an instrument which he drew for a client * * * Where two individuals for whom he drew a contract or a mortgage get into a dispute over it, he may not represent either”]; id., p 115 [“Irrespective of actual conflict of interest, mainte *326 nance of public confidence requires a lawyer not appear both for and against the same party in the same controversy.”])[1]
Since the prior representation by Wolfson of Herman Weinstein concerned the same “subject matter” as the present action, and since Wolfson is presently representing an interest adverse to the Weinstein interests, the authorities cited above strongly suggest disqualification is in order. Nevertheless, it is well to recall Chief Judge Kaufman’s oft-quoted admonition that, “When dealing with ethical principles * * * we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.’ ” (Funds of Funds v Anderson & Co., 567 F2d 225, 227, quoted in Board of Educ. v Nyquist, 590 F2d 1241, 1246.) It must also be remembered that our own Court of Appeals, speaking in Cardinale v Golinello (supra, p 294), emphasized that it was not there presented with “the potentially difficult problem of balancing the interests of a client desirous of retaining an attorney of his personal choice and preference against the interests of the opposing litigant to be free from the risks of opposition by a lawyer once privy to that litigant’s confidences.” (Cf. Greene v Greene, 47 NY2d 447, 454 [Jones, J., concurring opn].)
This case presents just such a balancing problem. Consequently, it is appropriate to take a hard look at the ethical principles espoused in the cited cases.
The substantial relation test applied in Cardinale (supra) was articulated by Judge Weinfeld in T. C. Theatre Corp. v Warner Bros. Pictures (113 F Supp 265, 268-269, supra) “I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were dis *327 closed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer’s duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.”
In the succeeding years, the test has been approved and followed by the Second Circuit and the District Courts. (Emle Inds. v Patentex, Inc., 478 F2d 562, 570,[2] citing Consolidated Theatres v Warner Bros. Circuit Mgt. Corp., 216 F2d 920; Doe v A Corp., 330 F Supp 1352, affd sub nom. Hall v A. Corp., 453 F2d 1375 [Per Curiam]; Empire Linotype School v United States; 143 F Supp 627; United States v Standard Oil Co., 136 F Supp 345.) Although the test continues to have validity (see Evans v Artek Systems Corp., 715 F2d 788), the courts in the Second Circuit have struggled with it since its first formulation[3] and have substantially modified it in three different respects, as will be demonstrated hereafter.
APPEARANCE OF IMPROPRIETY
In its process of “honing” the substantial relationship test (see Government of India v Cook Inds., 569 F2d 737, 739), the Second Circuit has recently concluded “that when there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases.” (Board of Educ. v Nyquist, 590 F2d 1241, 1247; accord Society for Good Will v Carey, 466 F Supp 722, 724-725 [Weinstein, J.].) This refusal to literally apply the “appearance of impropriety” language of Canon 9 of the ABA Code of Professional Responsibility has been applauded as avoiding the absurd result of a “per se prohibition on all representation adverse to a former client.” (See Developments in *328 the Law — Conflicts of Interest in the Legal Profession, 94 Harv L Rev 1244, 1327.)[4]
Although the New York courts have often emphasized the appearance of impropriety in their decisions addressing disqualification (e.g., Cardinale v Golinello, 43 NY2d, at p 296 [“The standards of the profession exist for the protection and assurance of the clients, and are demanding; an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests”]), the Court of Appeals has apparently never expressly held that the “appearance of impropriety”, standing alone, is sufficient to require disqualification. Indeed, the Second Department recently has held that such considerations may be outweighed by a client’s interest in “retaining an attorney of his own choice and preference.” (Matter of Harley, NYLJ, Dec. 15, 1983, p 12, cols 2, 3.)
In applying these emerging principles to this case, it is important to emphasize that the “appearance of impropriety” claim here is very weak. This is not a case, such as addressed by Drinker (op. cit., p 113), where an attorney seeks to attack the validity of an instrument he drew. Nor is it a case involving a “switchover of representation” where the lawyer changes sides from a former client to a current adverse client. (See Allegaert v Perot, 565 F2d 246, 251; Emle Inds. v Patentex, Inc., 478 F2d 562, supra; Hull v Celanese Corp., 513 F2d 568; NCK Organization v Bregman, 542 F2d 128.)
To the contrary, in the present case Wolfson is seeking to sustain the validity of the contract he drafted, and he is doing so on behalf of his original client in the matter, the estate of Joseph Roubicek. Moreover, although Ruth G. Weinstein now represents the legal interests of her deceased husband, Herman, it is pertinent in connection with *329 the “appearance” of the case that it is Ruth, not Wolfson, who seeks to repudiate Herman’s actions. Undoubtedly, to the “man on the street” Wolfson’s actions to facilitate the sale of the Baldwin property originally on behalf of the Roubicek estate and then also on behalf of Herman Weinstein have been consistent throughout. If there is an appearance of impropriety here, it is only perceptible to the eye of the highly trained professional. In the court’s view, it is not enough to require the attorney’s disqualification.
REBUTTABLE PRESUMPTION OF CONFIDENTIALITY
Because inquiry into whether an attorney actually gained access to confidential information in the course of a former representation could itself disclose the client’s confidences, Judge Weinfeld in the T. C. Theatre Corp. case (113 F Supp 265, 268, 269, supra) held that as long as there was a showing that the former matter was substantially related to the present matter “[t]he Court will assume that during the course of the former representation confidences were disclosed”. This approach has been construed as adopting an irrebuttable presumption of the receipt of confidential information. (Developments in the Law — Conflicts of Interest in the Legal Profession, 94 Harv L Rev 1244, 1328-1329.)
In the Second Circuit, however, inroads have also been made into this inflexible rule. In Silver Chrysler Plymouth v Chrysler Motors Corp. (518 F2d 751), the court refused to adopt a “blanket approach” to this question (p 754) holding instead: “There is reason to differentiate for disqualification purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery for a limited and specific purpose relating solely to legal questions * * * Under the latter circumstances the attorney’s role cannot be considered ‘representation’ within the meaning of T. C. Theatre Corp. and Ernie so as to require disqualification.” (Supra, at pp 756-757.) Although Silver Chrysler was principally concerned with the needs for mobility of young associates in large firms, it expressly extended its holding to others, including partners, who were only tangentially involved in a client’s matters. (Supra, at p 756.) Thus, the case adopts a “rebuttable presumption” (supra, at p 754), at least on the *330 question whether the attorney “has been in a position to learn [confidences].” (Supra, at p 757.)[5]
The position of the New York courts on this issue is very unclear. In Cardinale (43 NY2d, at p 292), the court appeared to adopt the blanket irrebuttable presumption rule, at least in respect of a small firm “characterized by an understandable informality”. Although the disqualified attorney in that case cited Silver Chrysler (supra) and similar Federal authorities, the court rejected them as “not persuasive” on the ground they involved “questions of the propriety of legal representation by former associates of very large firms * * * [which] are at best of only tangential interest in the present case * * * because they present different practical and ethical considerations”. (43 NY2d, at p 296.) The court held: “[I]t is no answer that the lawyer did not in fact obtain any confidential information * * * or even that it was only other members of his firm who rendered the services to the client.” (43 NY2d, at p 295.)
Notwithstanding, just two years later, in Greene v Greene (47 NY2d 447,453, supra), the court formulated the rule thus: “To obtain disqualification of the attorney, the former client need not show that confidential information necessarily will be disclosed in the course of the litigation; rather, a reasonable probability of disclosure should suffice (see Sheffield v State Bar of California, 22 Cal 2d 627; Galbraith v State Bar of California, 218 Cal 329).” This “reasonable probability” standard is both different from that set forth in Cardinale (supra) and Silver Chrysler (supra). Making matters even more confusing, the Second Department in the recent case of Colonie Hill v Duffy (86 AD2d 645, 646) approvingly cited Cardinale for the proposition that an attorney must “guard against not only the fact, but also the appearance, of impropriety”, but also cited Silver Chrysler for the rule that on a disqualification motion “facts must be demonstrated ‘which make it reasonable to infer that [the attorney] gained some information about his former client of some value to his present client’ ”.
*331 The conclusion to be drawn from these decisions is that the standard is evolving in New York on a case-by-case basis and that the nisi prius courts have a role to play in its evolution.
To this court, the Silver Chrysler standard appears to be a reasonable one, at least where the nature of the attorney’s retention suggests the absence of confidential communications.[6]
It must be emphasized that not every communication from a client to his attorney, or from an attorney to his client, is confidential. (See United States v Silverman, 430 F2d 106, 122, cert den 402 US 953; National Labor Relations Bd. v Harvey, 349 F2d 900, 905-906; Colton v United States, 306 F2d 633, 638; United States v Aluminum Co., 193 F Supp 251,253; Zenith Radio Corp. v Radio Corp., 121 F Supp 792, 794; United States v United Shoe Mach. Corp., 89 F Supp 357, 360.) Indeed, some attorney-client relations, by the very nature of their creation, do not contemplate the communication of confidential information (Aliegaert v Perot, 565 F2d 246, 250). Particularly is this so where communications between the client and attorney are shared with third parties (supra). It should be recalled, in this regard, that in T. C. Theatre Corp. (113 F Supp 265, supra) the progenitor of the “substantial relation” test, although Judge Weinfeld granted defendant Universal’s motion to disqualify, he denied the same motion by Universal’s codefendants, who were also codefendants in the prior action, on the ground the attorney’s relationship to those codefendants in the prior action “appears to have been a guarded rather than a confidential one.” (113 F Supp, at p 271.)
In the case before this court, if we put aside the unrebutted claim of Wolfson that he received no communications from Herman and Ruth Weinstein and concentrate instead on the nature of Wolfson’s retainer, it is apparent that he was, first and foremost, the attorney for the estate of Roubicek and became involved with the Weinsteins only because of, and insofar as, the Roubicek estate desired to sell the Baldwin property. Consequently, given Wolfson’s *332 pre-existing, and continuing, retainer by the Roubicek estate to further its interests, and given the Weinsteins’ undoubted knowledge of Wolfson’s long-standing allegiance to the Roubicek estate, it is highly probable that the Weinsteins communicated with Wolfson, if at all, with the knowledge that he was representing them only to the extent necessary to further the interests of the Roubicek estate. In such event, and knowing of his allegiance to a third party, it would be very unlikely that the Weinsteins would communicate confidential information to Wolfson. (Cf. Allegaert v Perot, 565 F2d 246, supra.) Consequently, a rebuttable presumption should apply in this case which presumption has been overcome by Wolfson’s uncontroverted disclaimer of receiving any communications from the Weinsteins.
“issues” versus “matters”
In T. C. Theatre Corp. (supra), Judge Weinfeld stated the question as whether “matters embraced within the pending suit * * * are substantially related to the matters or cause of action [in the former representation]” (113 F Supp, at pp 268, 269; emphasis added). Here, too, the Second Circuit has adopted a stricter interpretation than the other circuits. (Developments in the Law — Conflicts of Interest in the Legal Profession, 94 Harv L Rev 1244, 1325.) In Government of India v Cook Inds. (569 F2d 737, 740, supra) the court restated the Second Circuit rule to be that disqualification would be approved “only when the issues involved have been ‘identical’ or ‘essentially the same’.”
No New York case has been found to address the question whether the substantial relation test refers to issues or to something larger, such as transactions or causes of action. Consequently, because the Second Circuit rule appears to be a good one, it will be applied to the facts of this case.
The dispositive fact is found in the June 17,1983 letter of Mrs. Weinstein’s Florida attorneys, Donoff & Kern, in which they advise “that Ruth Weinstein now advises that she had obtained medical testimony to the effect that her husband did not understand the consequences of his actions at the time of the signing of the Contract for Sale and *333 Purchase.” This issue of capacity, as Ruth’s New York attorneys concede in their reply affirmation, is the principal question presented in the specific performance action before the court. But, obviously, this was not the issue concerning which Wolfson represented Herman Weinstein. Moreover, this is not the kind of issue which would ordinarily be the subject of confidential communications. If Wolfson’s former representation of Herman could in any way be useful to the estate of Roubicek with respect to this issue, it would undoubtedly be because it gave Wolfson an opportunity to testify to communications with Herman which demonstrated that he was of sound mind. But since Wolfson has disclaimed any such communications, and has thus removed himself as a potential witness, that threat no longer exists. With it goes any substantial claim that Wolfson’s limited representation of the Weinsteins could be used to the detriment of the Weinstein estate.
For all the foregoing reasons, the movant has not demonstrated sufficient reasons for the disqualification of Wolf-son. Nevertheless, this court notes the dictum in Silver Chrysler (518 F2d, at p 758) that “If during * * * further preparation, or even during the trial itself, there should appear indications that confidential information not apparent from the proof submitted thus far is being used, the trial judge will be available for such action as may be appropriate.”

. A similar passage, from the same page of Drinker (Legal Ethics) is cited by the Court of Appeals in Cardinale v Golinello (43 NY2d, at p 296).

. In Emle Inds. v Patentex, Inc. (478 F2d, at p 571), the court stated the reasons for the rule and concluded: “These considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client’s disadvantage.”

. See, e.g., Allegaert v Perot (565 F2d 246, 251), where the court observed that disqualification motions have now become “ ‘common tools of the litigation process * * * used * * * for purely strategic purposes’ ” (quoting Van Graafeiland, Lawyer’s Conflict of Interest — A Judge’s View [Part II], NYU, July 20, 1977, p 1, col 2; see, also, Board of Educ. v Nyquist, 590 F2d 1241, 1246; Foley & Co. v Vanderbilt, 523 F2d 1357, 1360 [Gurfein, J., concurring opn]; Society for Good Will v Carey, 466 F Supp 722, 724).

. But cf. Note, Ethical Considerations When An Attorney Opposes A Former Client: The Need For A Realistic Application of Canon Nine, 52 Chicago-Kent L Rev 525, 536 (arguing for “a more aggresive application of Canon Nine * * * requiring less emphasis on the interests of the attorney and the new client and more emphasis on the broader interests of the public, as well as the specific interest of the former client.”) This note is of particular interest in that it dates the “appearance of impropriety” consideration in disqualification cases to 1970 when the new ABA Code of Professional Responsibility was adopted. Prior to that time “the substantial relationship test as originally developed did not incorporate the appearance of impropriety as a significant or determinative factor.” (Id., at p 536.)

. In the Harvard Law Review note, cited above, the case is construed to adopt a rebuttable presumption “when the representation involves a significant departure from the traditional conception of the attorney-client relationship.” (94 Harv L Rev 1244, 1330.)

. Judge Mansfield has argued for a rebuttable presumption in all cases. (Government of India v Cook Inds., 569 F2d 737, 741 [concurring opn].)