**Focht v. Bryn Mawr Hospital**

*Nancy Rhoads*, for plaintiff.
*James Stroud*, for defendant.

HERRON, J., October 22, 1992 —

## MEMORANDUM OPINION

Defendant Bryn Mawr Hospital has moved to disqualify plaintiffs' counsel. The basis of this motion is counsel's prior association with a law firm which represented defendant. For the following reasons, the motion to disqualify is denied.

## BACKGROUND

Nancy Rhoads, Esquire worked as an associate attorney at the law firm of Post & Schell for approximately five years. During that time, Rhoads represented Bryn Mawr Hospital as defendant in three medical malpractice suits. Rhoads also represented some 59 other hospitals in the Delaware Valley.

In the case of *Rice v. Bryn Mawr Hospital,* Rhoads billed 66.4 hours between July 21, 1987, and November 13, 1990. For that case, Rhoads prepared and received correspondence, reviewed files, took part in conferences, and prepared pleadings and discovery. Rhoads engaged in discussions and conferences with Bryn Mawr's personnel, including the preparation of Bryn Mawr's chief

of pathology for his deposition. Rhoads' recollection of this matter is best described as sketchy.

In the case of *Turner v. Bryn Mawr Hospital,* Rhoads billed 239 hours between May 4, 1988 and November 15, 1990. In the *Turner* case, Rhoads was the lead attorney representing Bryn Mawr. She took part in seven depositions, prepared pleadings, and conducted all other aspects of the litigation until she left Post & Schell. However, Rhoads testified at her deposition that she had no specific recollection of any confidential information being relayed to her.

The third case in which Rhoads was involved is non-determinative of the issues in this case since the parties have failed to produce sufficient detailed information to permit analysis.

The *Rice* case involved the orthopedic treatment of the plaintiff's right foot. The *Turner* case involved the treatment of a torn meniscus in the plaintiff's right knee.

After leaving Post & Schell, Rhoads began working at Sheller, Ludwig & Badey. On September 9, 1991, Rhoads signed the complaint beginning the instant action, a medical malpractice suit naming Bryn Mawr as a defendant. The plaintiff in this suit seeks damages for alleged negligence up to and during the delivery of a child. Subsequently, on April 15, 1992, defendant Bryn Mawr moved to disqualify Rhoads and Sheller, Ludwig & Badey from representing plaintiffs in this case.

Bryn Mawr asserted that Rhoads' prior representation of Bryn Mawr is substantially related to the instant case and, therefore, Rhoads' current representation is a violation of Rule 1.9 of the Rules of Professional Conduct. Further,

Bryn Mawr claims that Sheller, Ludwig & Badey is disqualified from representing plaintiffs by virtue of Rule 1.10.[1]

## *Rule 1.9*

The ethical propriety of an attorney's representation of an interest which is adverse to that of a former client is governed by Rule of Professional Conduct 1.9 which states:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation; or

"(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known." Rules of Professional Conduct, Rule 1.9.[2]

This rule seeks to protect a client from the future prospect of her attorney marching off to represent her adversaries, using the former client's secrets to more effectively represent the new clients. Protecting clients from this scenario promotes fairness in litigation and encourages clients to freely communicate with their attorneys.

1. The analysis of ethical propriety of Rhoads' representation precludes the necessity of applying Rule 1.10 to Sheller, Ludwig & Badey's role in the representation.

2. Adopted October 16, 1987 by the Supreme Court of Pennsylvania, effective April 1, 1988.

In this case, it is clear that Bryn Mawr is a former client of Rhoads. It is also clear that the interests of Rhoads' current client, the Fochts, are materially adverse to Bryn Mawr's interests. What is less clear is whether the *Rice* and *Turner* cases are "substantially related" to the *Focht* litigation.

## Substantial Relation

Generically stated, a substantial relationship exists between two representations if facts disclosed in the former representation are pertinent to the subsequent litigation. *United States Football League v. National Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985). A useful method for assessing the presence of a substantial relationship is the examination of three factors:

"(1) the scope of the prior representation;

"(2) the nature of the present action; and

"(3) whether confidences might have been disclosed during the prior representation which are relevant to the present action." *Unisys Corporation v. Ameritif Corporation*, No. 92-1966, slip op. at 7 (E.D. Pa. August 19, 1992) (citing *INA Underwriters v. Nalibotsky*, 594 F. Supp. 1199 (E.D. Pa. 1984)). The burden of proving a substantial relationship lies with the party moving for disqualification. *Nalibotsky*, 594 F. Supp. at 1206-07. However, once a substantial relationship is established between the representations, a presumption arises that pertinent confidential information was disclosed to counsel. See *Maritrans v. Pepper, Hamilton & Scheetz*, 529, Pa. 241, 260, 602 A.2d 1277, 1286-87 (1992); *T.C. Theatre Corp. v. Warner Bros. Pictures Inc.*, 113 F. Supp. 265,

268-69 (S.D.N.Y. 1953). Whether that presumption is rebuttable is a very specific fact matter. Compare *T.C. Theatre Corp., supra* at 268 (presumption irrebuttable when attorney seeks to "switch sides") with *EZ Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459, 1461 (Fed. Cir. 1984) (presumption that confidential information discussed with individual attorney rebuttable). In the present case, movant has not sufficiently demonstrated a substantial relationship to create any presumption that confidential information was disclosed to Rhoads.

## DISCUSSION

Bryn Mawr alleges that it disclosed to Rhoads such confidences as "information regarding formulation and enforcement of hospital policy and procedure, supervision of hospital personnel, methods of determining professional competence, information regarding the compilation and existence of credential files and documents, written and unwritten responsibilities of physicians, information concerning venue, and detailed financial information concerning the hospital's net worth." Memorandum of Law in Support of Motion to Disqualify at 5. Movant further urges that the former and present representations are substantially related because all contain allegations of Bryn Mawr's negligence in recruiting and supervising physicians and staff members. Bryn Mawr's vice president-administration, Kevin Mahoney, testified that "from the hospital's perspective the *Focht* case and the *Turner* case are identical. They're identical because how we go about our business is not differentiated out by specialty or by the physicians involved. As an organization we credential, re-credential, monitor the quality of care." Mahoney, Dep.

**156**

Tr. 59. Mahoney further states that "[t]he material issues are going to be the same standards that the hospital has held to in almost every case ... they involve monitoring the employees, making sure we have a competent medical staff, making sure that we have technology available, making sure the board of directors is running the hospital." *Id.* at 68.

Computer printouts from Post & Schell confirm Rhoads' minimal involvement in the *Rice* case and more extensive involvement in the *Turner* case. James Jordan, Esquire, a Post & Schell partner who practiced in the specialty of medical malpractice during Rhoads' tenure at that firm, swore in an affidavit that the types of information alleged by Bryn Mawr to have been disclosed to Rhoads were used by attorneys involved in "legal services provided by hospital corporate counsel, and not by an attorney handling an individual medical malpractice suit against a hospital and/or a physician on the hospital staff. To the extent that Post & Schell did provide such services to Bryn Mawr Hospital, that representation would have been provided by a separate and distinct department at Post & Schell, with which Nancy Rhoads was never associated." *Jordan Affodavit* at 2.

Rhoads billed between 19,000-21,000 hours during her tenure at Post & Schell. Attributing accuracy to the computer runs and veracity to Rhoads' Affidavit, Rhoads spent less than two percent of her time at Post & Schell on Bryn Mawr Hospital matters. At her deposition, Rhoads was unable to recall receiving any specific confidential communications and was unable to produce any from her personal files. Post & Schell has indicated that the *Turner* and *Rice* files do *not* "contain any confidential

material that to [their knowledge] could relate to any other case." Response of plaintiffs to supplemental brief in support of petition to disqualify, Exhibit A.

From the letterhead of the Post & Schell firm, it appears that firm includes around 100 attorneys. Rhoads cannot be assumed to have acquired confidential information pertinent to every medical malpractice case naming Bryn Mawr as a defendant, merely because of her participation in Bryn Mawr's representation as a single litigation associate in a large "full service" law firm, where each facet of representation is entrusted to a different department. See *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 753-54 (2d Cir. 1975) (association with large law firm not necessarily sign of acquisition of confidential client information harmful in later, adverse representations).

This analysis is not at odds with *Maritrans.* In *Maritrans,* it was evident (if not obvious) that Pepper, Hamilton & Scheetz and Anthony Messina had possession of confidential information about their client's labor contracts, the revelation of which to Maritrans' competitors threatened economic harm to the client. *Id.* at 248, 602 A.2d at 1280-81. Maritrans' competitors testified that they wanted access to the same confidential information in Pepper and Messina's possession. *Id.* at 250, 602 A.2d at 1281.

In *Maritrans,* the scope of the representations was clearly substantially related: Pepper represented Maritrans in labor negotiations; labor contracts are the single factor which can alone decide competitiveness in Maritrans' industry; and Messina and other Pepper attorneys in possession of Maritrans' confidential information about labor

contracts, were not effectively "screened" from the representation of Maritrans' direct competitors. *Id.* Here, no such relation is apparent.

Movants' argument that there is a substantial relationship between Rhoads' representation of Bryn Mawr while an associate at Post & Schell and Rhoads' current representation of the *Focht* plaintiffs amounts to an argument that all medical malpractice cases are the same. This court is unwilling to accept such a broad characterization. To do so would be to bar any defense lawyer from changing practices to the plaintiff's bar without moving to a different geographical region. Rhoads, under movants' theory, could incur a conflict of interest by representing any of 60 different hospitals in the Delaware Valley.

## CONCLUSION

Movants have proved that Rhoads is aware of Bryn Mawr's financial condition, which is public knowledge, and that Rhoads was entrusted with the fiduciary duty of defending the hospital's best interests in two previous medical malpractice cases. Having failed to show how this information can impact on Rhoads' participation in the instant case, movants have not proved there is a substantial relationship between the two representations.[3] Therefore, the motion to disqualify is denied.

---

3. Bryn Mawr's request for an *ex parte,* in camera hearing is premature. First, this court does not favorably view such departures from the open adversarial process. Second, to disclose to the court any confidential information Bryn Mawr views as harmful to its interests without having established a substantial relationship between the representations is to place the cart before the horse. The law *assumes* the disclosure of confidential information to the attorney when the substantial relationship is shown.