573 P.2d 473 (1978)
The ALEUT CORPORATION, Carl Moses, Arlene Moses, and Stanley Mack, Petitioners,
v.
Lillie McGARVEY, William Hope, Father Paul Merculief, Vincent Tutiakoff, Barbara Carlson, Flore Lekanof, Alice Petrivelli, Iliodor Philemonof, Alexandria Vanner, Representative Alvin Osterback, Marie Osterback, Michael Zacharof, Alfred Stepetin, Ilarion Merculieff, Feon Kashevarof, Leo Merculief, Gertrude Craimer, Joe Merculief, and Charlotte Giszold, Respondents.
No. 3611.
Supreme Court of Alaska.
January 11, 1978.
*474 Ernest Schlereth, Anchorage, for petitioners.
John Anthony Smith and Kneeland L. Taylor, Anchorage, for respondents.
Before BOOCHEVER, C.J., and RABINOWITZ, BURKE and MATTHEWS, JJ.

OPINION
MATTHEWS, Justice.
Respondents in this case, all of whom are shareholders in The Aleut Corporation, have sued The Aleut Corporation, its president, Carl Moses, and two others who are members of its Board of Directors. Respondents seek to set aside the directors' election held May 14, 1977.
The corporation moved to disqualify respondents' attorneys John Anthony Smith and Kneeland Taylor because Smith had previously acted as general counsel to the corporation. The motion was denied and a petition for review was taken. We granted review because we believed that postponement of review would result in injustice through the impairment of a legal right and that the matter was of such importance as to justify deviation from normal appellate procedures.[1] We reverse and remand with directions to the Superior Court to grant petitioners' motion.
The crucial events in this suit revolve around Carl Moses' proxy solicitation of April 23, 1977, and the May 14, 1977 directors' election held under corporate by-laws which were amended in 1977. Respondents define the key issues as: (1) whether Carl Moses misrepresented, in his proxy solicitation, certain facts as to corporation investments; and (2) whether the election should be invalidated because the amended by-laws under which the election was held violated certain provisions of state law and the Alaska Native Claims Settlement Act, 43 U.S.C. § 1601 et seq.
Smith acted as general counsel to the corporation from 1971 through 1975. He resigned as corporate counsel in June of 1975, nearly two years before Carl Moses' proxy solicitation and the contested election.
Carl Moses' proxy solicitation was made in response to a March 30, 1977 letter soliciting proxies by Board candidate Ilarion Merculieff, one of the respondents here. In that letter Merculieff contended that certain Fairbanks real property which had been purchased by the corporation was a poor investment. Moses' response, in defense of management, was that the properties were an excellent investment. Whether Moses' statements in this regard were misrepresentations is an important issue in the case. Smith was acting as general counsel for the corporation when it acquired the Fairbanks properties and participated in a discussion of the merits of the purchase at a corporate meeting in Unalaska. He also drafted portions of the purchase agreement.
The claim concerning the amended by-law is that it eliminated geographical seats on the board but failed to provide for minority rights of shareholders by providing for cumulative voting. Cumulative voting had been eliminated by a prior amendment in 1974, in accordance with Smith's advice. He believed that a geographical seating system was wise and his advice was followed until the disputed 1977 amendment.
We believe that an attorney may not represent a third party against a former client where there exists a substantial possibility that knowledge gained by him in the earlier professional relationship can be used against the former client, or where the subject *475 matter of his present undertaking has a substantial relationship to that of his prior representation. These principles have been expressed by many authorities.[2] In Chugach Electric Association v. U.S. District Court for the District of Alaska, 370 F.2d 441 (9th Cir.1966), an attorney who had served as general counsel for Chugach later represented another party in litigation against Chugach. Holding that the attorney should be disqualified from representing his new client, the court stated:
The problem here is not limited to the question whether [the attorney] was connected with petitioner as its counsel at the time agreements were reached and overt acts taken, but includes the question whether, as attorney, he was in a position to acquire knowledge casting light on the purpose of later acts and agreements.
.....
A likelihood here exists which cannot be disregarded that [the attorney's] knowledge of private matters gained in confidence would provide him with greater insight and understanding of the significance of subsequent events in an antitrust context and offer a promising source of discovery.
Id. at 443. In In Re Boone, 83 F. 944, 952-53 (N.D.Cal. 1897), the court stated:
Of course, it is conceded that an attorney may represent his client's adversary with perfect propriety whenever their interests are not hostile to each other. The test of inconsistency is not whether the attorney has ever appeared for the party against whom he now proposes to appear, but it is whether his accepting the new retainer will require him, in forwarding the interests of his new client, to do anything which will injuriously affect his former client in any matter in which he formerly represented him, and also whether he will be called upon, in his new relation, to use against his former client any knowledge or information acquired through their former connection. (citation omitted)
In T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265 (S.D.N.Y. 1953), the court rejected an argument that the former client must show that it had in fact disclosed confidences to the attorney which the attorney could use against it in the present case. Instead, the court held that:
[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.
Id. at 268.
We believe that there is a strong likelihood that during the course of his representation of The Aleut Corporation as general counsel, Smith acquired knowledge of the workings of the corporation which will aid him in the prosecution of this lawsuit against it. Since Smith was involved in the corporation's acquisition of the disputed property, there is a substantial relationship between the subject matter of the present case and his former representation. Because of his former position as counsel to the corporation he is aware of certain potential problem areas concerning the property in question which may be used to develop proof that it was a poor investment.[3] Similarly, the challenged by-law amendment seems substantially related to his former representation. While general counsel to the corporation, Smith advised it to eliminate cumulative voting and to maintain a *476 system of geographical seating. Now the corporation has abolished geographical seating and Smith, on behalf of his new clients, contends that such amendment taken together with the prior amendment which he had counselled renders the directors' election invalid.
Kneeland Taylor is now the law partner of Mr. Smith.[4] It is well established that where one member of a firm is disqualified from representing a client all are.[5] Thus, Mr. Taylor, as well as Mr. Smith, are disqualified from representing respondents.
Messrs. Smith and Taylor have pointed out that they are representing respondents without charging them any fee and that they consented to represent respondents only after other attorneys had refused representation unless respondents paid a substantial retainer. We accept these representations at face value. Nothing which we have said here should be construed to reflect adversely on the motives of Messrs. Smith and Taylor in undertaking to represent respondents. However, we do not believe these considerations to be a justification for the adversary stance which they have taken against their former client under the facts of this case.
REVERSED AND REMANDED with directions to grant the motion to disqualify.
CONNOR, J., not participating.
NOTES
[1] See Appellate Rules 23(e) and 24(a).
[2] These principles may also be inferred from Ethical Considerations 4-5, 4-6 and 9-6 of the Code of Professional Responsibility. A thorough review of the authorities, and a proposed disciplinary rule appears in Note: Attorney's Conflict of Interests: Representation of Interest Adverse to That of Former Client, 55 B.U.L. Rev. 61 (1975).
[3] In a letter Smith wrote to Carl Moses dated June 25, 1975 he noted that he had not seen a title report or appraisal of the property, had not received certain agreements concerning loan assumptions and a water system conversion, and had not ascertained whether the buildings on the property were in compliance with applicable building codes.
[4] In 1974 he worked as a law clerk for The Aleut Corporation under Smith's supervision.
[5] Telos, Inc. v. Hawaiian Telephone Co., 397 F. Supp. 1314, 1319 (D.Haw. 1975); Brasseaux v. Girouard, 214 So.2d 401, 406 (La. App. 1968); Humble Oil & Refining Company v. American Oil Company, 224 F. Supp. 909, 910-911 (E.D. Mo. 1963); Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures, 224 F.2d 824, 826 (2d Cir.1955).