**In the Matter of the ESTATE OF Chet ADKINS, Deceased.**

**No. S–5487.**

Supreme Court of Alaska.

May 13, 1994.

Rehearing Denied June 10, 1994.

Chet Harvey Adkins, pro se.

Julia B. Bockmon, Robertson, Monagle & Eastaugh, Anchorage, for appellee.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

OPINION

COMPTON, Justice.

This case presents the issue whether the probate court abused its discretion in closing an estate notwithstanding one heir's allegations that (1) the court should have disqualified an attorney for the estate and (2) the court should have voided an agreement pursuant to which the heir relinquished his interest in the estate. We affirm.

**I. *FACTUAL AND PROCEDURAL BACKGROUND***

*A. Facts*

Chet W. Adkins (Decedent) committed suicide in December 1985. His son, Chet H. Adkins (Adkins), retained an attorney, George E. Goerig, Jr. (Goerig), to assist in his application to become administrator of the Decedent's estate (the Estate). The probate court[1] designated Adkins as special administrator.[2] Adkins substituted the law

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. In Alaska, jurisdiction over probate matters is vested in the superior court. AS 22.10.020(a).

2. AS 13.16.310 provides in part:

firm of Campbell, Ostrosky & Thwaites as counsel to the Estate, with Goerig remaining as its tax counsel. The probate court ultimately designated Adkins as personal representative.[3]

In March 1987 Adkins was charged with murder. He resigned as personal representative and his sisters, Cheryl O'Brien and Brenda Adkins, became co-personal representatives of the Estate. Goerig was substituted as counsel to the Estate. In May 1987 Adkins signed a Relinquishment Agreement under which he renounced his interest in the Estate and certain trust funds in exchange for the Estate paying his legal fees to defend against the murder charge.[4] Adkins eventually pled guilty to second-degree murder and was incarcerated.

### B. *Proceedings in the Probate Court*

Following Goerig's substitution as counsel to the Estate, Adkins petitioned the probate court to disqualify Goerig, alleging that Goerig had a conflict of interest.[5] Goerig moved to stay the disqualification petition because Adkins had made identical claims in a malpractice suit he had filed against Goerig, *Adkins v. Goerig*, No. 3AN–90–8261 Ci. (Alaska Super., filed September 30, 1990)

(malpractice action). The probate court initially stayed consideration of Adkins' petition for disqualification, but *dismissed* the petition when it approved closure of the Estate:

> The court finds that the best interests of this estate require swift resolution and closing of the estate. The court further finds that disqualification of the estate's remaining attorney, George E. Goerig, would not accomplish that purpose and would severely prejudice and harm the estate. If Mr. Goerig were disqualified the estate would have to employ a new attorney for the purposes of the final accounting and closing of the estate. Such attorney would be required to master the details of this estate which could only be accomplished at great expense. The estate has no remaining funds available to pay such attorney. The court further finds that there would be no harm to the estate by permitting the estate to be closed with George Goerig's participation.

Adkins appeals pro se. AS 22.05.010; Alaska R.App.P. 202(a).

## II. *DISCUSSION*

### A. *Disqualification*

 We review questions of attorney disqualification under the abuse of discretion

---

3. A special administrator may be appointed ... on the application of any interested person when necessary to protect the estate of a decedent before the appointment of a general personal representative....
AS 13.16.310(1). A special administrator "has the power of a personal representative ... necessary to perform the special administrator's duties." AS 13.16.320.

3. The duties and powers of a personal representative are detailed in AS 13.16.340–.440. *See also* Alaska R.Prob.P. 7.

4. The Relinquishment Agreement provided in part:
1. CHET H. ADKINS hereby releases and relinquishes any claim or demand that he may have against the Estate....
2. CHET H. ADKINS hereby releases and relinquishes any claim that he may have to any of the trust or trust funds and any assets purchased by such trust funds, to his sisters CHERYL O'BRIEN and BRENDA ADKINS, to carry out the trust purposes and further specifically waives and releases any rights that he may have, if any, to any of the proceeds he may receive as a beneficiary of the trust and any trust funds.
....

5. The Estate and the trust agree to pay on behalf of CHET H. ADKINS the attorney's fees as may be required ... for the representation of CHET H. ADKINS in an amount not to exceed $30,000.00....
The "trust funds" to which paragraph 2 refers include $650,000.00 insurance proceeds.

5. Adkins made the following allegations: (1) Goerig's representation of the Estate under the co-personal representatives was inherently adverse to Goerig's representation of the Estate when Adkins was personal representative; (2) Goerig did not clarify the scope or termination of the attorney-client relationship; (3) Goerig's meetings with Brenda Adkins and Cheryl O'Brien, following Adkins' arrest but before the court substituted the co-personal representatives, violated client confidences; and (4) Goerig should have withdrawn when certain interests of the Estate were apparently adverse to Adkins (i.e., misappropriation of funds, the existence of a trust in life insurance proceeds, and ownership of a certain asset). Adkins also sought the disqualification of two other attorneys who later withdrew.

standard. *Lowdermilk v. Lowdermilk*, 825 P.2d 874, 876 (Alaska 1992); *Munn v. Bristol Bay Hous. Auth.*, 777 P.2d 188, 196 (Alaska 1989). The crux of the disqualification issue is whether an attorney's representation of a new client " 'will injuriously affect his former client in any matter in which [the attorney] formerly represented [the former client].' " *Aleut Corp. v. McGarvey*, 573 P.2d 473, 475 (Alaska 1978) (quoting *In Re Boone*, 83 F. 944, 952–53 (N.D.Cal.1897)). We have held that

> an attorney may not represent a third party against a former client where there exists a substantial possibility that knowledge gained by him in the earlier professional relationship can be used against the former client, *or* where the subject matter of his present undertaking has a substantial relationship to that of his prior representation.

*Id.* at 474–75 (emphasis added).

Adkins contends that the probate court erred in not disqualifying Goerig from representing the Estate. He argues that

> "[t]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client."

*Id.* at 475 (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953)). In the alternative, Adkins argues that Goerig should be disqualified because he gained confidential knowledge from Adkins which was later used against Adkins. *Id.* at 474–75.

■ A possibility of conflict always exists when an attorney represents an estate under different administrators or representatives. Nonetheless, Adkins has not made a persuasive showing that Goerig's representation of the Estate would injuriously affect Adkins because of any matter which might arise from Goerig's previous professional contact with Adkins.

The Master's recommendation staying the disqualification petition concluded "[i]t is not clear to the master what future harm or prejudice Mr. Adkins will suffer." Adkins did not present any further evidence of prejudice in the time between the stay order and final closure.[6] Adkins has not shown that Goerig's continuing representation of the Estate under the co-personal representatives was in any way adversarial or prejudicial to Adkins' interests.[7] Moreover, Adkins fails to describe any specific confidences that were or might have been violated by Goerig's continuing representation of the Estate. Absent such a showing of prejudice, it was within the court's discretion not to disqualify Goerig. We conclude that the probate court's dismissal of the disqualification petition was not an abuse of discretion.

### B. *The Relinquishment Agreement*

■ Adkins argues that the probate court erred in not voiding the Relinquishment Agreement on the grounds of fraud, misrepresentation and breach of the fiduciary duty of disclosure. Goerig argues that because Adkins withdrew his pleadings alleging fraud-related defenses to the Relinquishment Agreement, he has abandoned them for the purposes of this appeal.

Adkins contemplated two ways to attack the Relinquishment Agreement's validity vis-a-vis the trust:[8] (1) challenging the validity of the trust and (2) asserting fraud-related defenses.

With regard to the validity of the trust, the probate court approved the Master's conclusion that Adkins "attacks the 'trust' as a sham, but does not present a showing that the [relinquishment] agreement was entered

---

6. Adkins merely opposed the stay and argued that Goerig's representation would prejudice the Estate.

7. Indeed, the interests of the Estate, to which Goerig owed a primary duty, remained consistent throughout the tenures of all representatives.

8. Adkins did not challenge the probate court's approval of the Master's finding that the Relinquishment Agreement was void with regard to the *Estate*. Adkins' attempted renunciation of his interest in the Estate was not in compliance with the requirements of AS 13.11.295.

into mistakenly, fraudulently, or by coercion. The terms of the 'trust' are of no concern to Mr. Adkins if he has relinquished any interest in it." [9] Although Adkins opposed the Master's recommendations, there was no subsequent action by the probate court. Adkins does not appeal this order.

■ With regard to the fraud-related defenses, Adkins filed a "Petition to Rescind and Void the 'Relinquishment Agreement' *for the Causes of Fraud and Constructive Fraud*," but later withdrew the motion. Where a party has withdrawn pleadings, he cannot later appeal based on such grounds. *See Ogden v. State*, 395 P.2d 371, 372 (Alaska 1964) (holding appeal improper where trial judge did not rule upon question). Adkins' fraud-related claims relating to the Relinquishment Agreement, therefore, are not before this court for review.[10]

## III. *CONCLUSION*

Because Adkins failed to show that he suffered injury or prejudice as a result of Goerig's representation of the Estate, the probate court did not abuse its discretion in dismissing Adkins' petition to disqualify Goerig. Furthermore, because Adkins withdrew his challenges to the Relinquishment Agreement, he cannot renew them on appeal. The probate court's order closing the Estate is AFFIRMED.

---

**9.** Adkins attacked the trust as (1) "a tool to fleece [Adkins] of his assets for the gain of the co-personal representatives and their legal council [sic]," and (2) violative of the statutes applicable to trusts.

**10.** Adkins' malpractice action against Goerig remains to be adjudicated.