*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AIMEE L. MOORE, | ) | |
| | ) | Supreme Court No. S-15281 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-06990 CI |
| v. | ) | |
| | ) | O P I N I O N |
| DONALD C. OLSON, DONALD | ) | |
| OLSON ENTERPRISES, INC., OLSON | ) | No. 7017 – July 2, 2015 |
| VENTURES, LLC, OLSON AIR | ) | |
| SERVICE, INC., REINDEER SPIRIT, | ) | |
| INC., and POLAR EXPRESS | ) | |
| AIRWAYS, INC., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: William F. Brattain, Baker Brattain, LLC, Anchorage, for Appellant. Robert J. Gunther, Law Office of Robert J. Gunther, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

In this case we are asked to review a superior court's decision confirming an arbitration award. In the superior court the appellant challenged procedural decisions

made by the arbitrator; before us the appellant challenges both procedural and substantive decisions made by the superior court. Applying the appropriate deferential standards of review, we affirm the superior court's decision confirming the arbitration award.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Donald Olson and Aimee Moore met in 1995. Between 1995 and 2004 they had business and personal relationships. The business relationship began with Donald training Aimee to fly helicopters in exchange for Aimee's work for Donald and his businesses. Eventually Aimee managed Donald's businesses, and they agreed that she would receive a share of business profits. Aimee and Donald dispute the nature of their personal relationship: Aimee characterizes the relationship as a cohabative domestic partnership; Donald asserts the relationship was not a domestic partnership.[1]

Aimee terminated the personal relationship in July 2004. In December 2004 Aimee and Donald signed an agreement "related to the deferred compensation owed Aimee . . . for work performed during the period January 1996 through 2004." In November 2005, after negotiating for more than a year, Aimee and Donald signed a final settlement agreement to end their business relationship.

During settlement negotiations and mediation Aimee chose not to have a professional participate on her behalf, but she did consult attorneys and accountants. Donald agreed to transfer to Aimee $350,000 cash as well as real property valued at $150,000. Donald, on behalf of his businesses, also agreed to transfer to Aimee half of

---

[1]    We have explained that a personal relationship is a domestic partnership when the parties "intended to share in the fruits of their relationship as though married, justifying an equal division of their property." *Reed v. Parrish*, 286 P.3d 1054, 1057 (Alaska 2012) (citing *Julsen v. Julsen*, 741 P.2d 642, 645 (Alaska 1987)).

the net proceeds from the rents and sale of two hangars — for a five-year period — in an amount up to $300,000. Donald agreed to make a good faith effort to market and sell the hangars during the five-year period. In return Aimee agreed to pay half the operating expenses of each hangar prior to sale, resign from the businesses, execute a mutual release of claims, and maintain confidentiality.

The settlement agreement gave either party the right to arbitrate any disputes and required that the losing party pay "reasonable actual attorney['s] fees." The agreement included a provision that "[t]he decision and award of the arbitrator shall be final and binding upon the parties and non-appealable," and further provided:

> In the event either party shall be in default in the performance of any of its obligations under this Agreement and an action shall be brought for the enforcement thereof, the defaulting party shall pay to the other all the costs incurred therefor, including reasonable actual attorney['s] fees.

Donald immediately transferred the cash and the real property to Aimee, fulfilling his personal obligation under the settlement agreement. But Aimee continued to have some involvement with the hangars and Donald's businesses, including some interactions with Robert Gunther, an attorney who began representing the businesses in 2007. The interactions resulted from (1) litigation against a third party and (2) lease negotiations with a potential hangar lessee.

The hangars were not sold by November 2010. But during the five years the businesses paid Aimee rents totaling about $285,000, so Aimee had received all but about $15,000 of the agreed upon $300,000. During that same period Aimee reimbursed the businesses for half of the hangar expenses, including $4,500 for Gunther's legal fees. In February 2012, shortly after Aimee initiated arbitration proceedings, the businesses paid Aimee the remaining amount due on the agreed upon $300,000 and also returned the money Aimee had paid for half of the hangar expenses.

**B. Proceedings**

Aimee initiated arbitration against Donald, but not his businesses, in January 2012. Aimee asserted:

> Pursuant to the property settlement of the parties' long term cohabitation and partnership, . . . [Donald] had an obligation to pay [Aimee] approximately $300,000 through the sale of two specific properties.
>
> [Donald] breached this agreement in some or all of the following ways: (1) he failed to promptly sell the properties and fund the balance of the $300,000 payment; (2) he continued to require [Aimee's] involvement in the management of the property by asking her to meet and negotiate with prospective tenants and to deal with tenant issues; and (3) by asking for additional contributions to maintain and improve the property. To date, [Donald] has not attempted to sell the properties despite his promise to do so. Because [Donald] committed a breach of the contract, the contract should either be rescinded in its entirety and the parties restored to their respective positions *status quo ante* or, in the alternative, [Aimee] should receive an amount equal to the present value of the property at the time of sale or as otherwise determined as being just and equitable, less interim payments received by her prior to notice of the breach.

Charles Kasmar entered an appearance as Donald's attorney, and an arbitration hearing was scheduled for December 2012.

In early November 2012 Kasmar emailed Aimee's attorney, William Brattain, explaining that "Robert Gunther will be entering an appearance on behalf of [Donald's businesses] when they are added as party respondents." Kasmar, Gunther, and Brattain stipulated to the addition of Donald's businesses and Gunther's representation of the businesses in the arbitration. They also agreed to arbitration scheduling and deadlines, including a December 3 deadline for motions. Gunther entered his appearance in the arbitration on December 3.

In mid-January 2013 Aimee moved to continue the arbitration proceedings, arguing that she needed more time to prepare because deposition testimony had complicated the scope of the arbitration and because the hangars were not yet professionally appraised. Aimee also moved to disqualify Gunther, arguing that he had a conflict of interest because he had represented Aimee in a substantially related matter — the hangar lease negotiations — and arguing that Gunther was a vital witness for the arbitration. Donald and the businesses opposed Aimee's motions. Gunther submitted an affidavit asserting that he had "never entered into an express formal, or an implied, agreement to represent Aimee."

The arbitrator denied the motion to continue, concluding that the motion was untimely filed without justification. The arbitrator found that Aimee knew from the outset of arbitration that appraising the hangars might be necessary. The arbitrator also found that "a continuance of the arbitration would delay the final resolution of the dispute between the parties and would defeat the primary benefit of arbitration of expeditiously and inexpensively resolv[ing] the dispute between the parties."

The arbitrator also denied Aimee's motion to disqualify Gunther, concluding that the motion was untimely filed without justification. The arbitrator noted that Aimee knew in November 2012 that Gunther had become involved in the arbitration proceedings; Aimee did not support her motion with an affidavit and only filed an affidavit with her reply; the facts did not support finding an attorney-client relationship between Aimee and Gunther; and the alleged representation was not in a substantially related matter. The arbitrator finally found that "[t]he timing of the motion to disqualify Gunther from these proceedings is suspect."

The parties appeared before the arbitrator in February 2013. The arbitrator ultimately agreed with Donald and his businesses, concluding that the parties' personal relationship was not a domestic partnership and finding that Donald and the businesses

had not materially breached the settlement agreement. The arbitrator ruled in Donald's and the businesses' favor and awarded them reasonable prevailing party costs and attorney's fees.

Donald and the businesses applied in superior court to confirm the arbitration award. Aimee sought to vacate the award, arguing that: (1) "[b]y not recusing Mr. Gunther, the Arbitrator substantially prejudiced [Aimee's] rights, and thus under A.S. 09.43.500, the Arbitration must be vacated"; and (2) "[the] refusal by the Arbitrator to continue the hearing . . . constituted a substantial prejudice of [Aimee's] rights, and thus under A.S. 09.43.500, this court should vacate, rather than confirm, the decision of the Arbitrator." Aimee also moved to disqualify Gunther from the superior court proceedings. The court denied Aimee's motion to disqualify Gunther, denied Aimee's vacatur request, and confirmed the arbitration award. The court also granted Donald's and the businesses' motions for full reasonable costs and attorney's fees, finding that the settlement agreement mandated such an award, Alaska Civil Rule 82 supported a full reasonable fee award, and that Donald's and the businesses' actual costs and fees were reasonable.

Aimee appeals, arguing that the superior court erred and violated her right to due process by denying her disqualification motion, confirming the arbitration award, and awarding attorney's fees, all without holding a hearing.

## III. STANDARD OF REVIEW

"A superior court's decision reviewing an arbitration award is subject to de novo review."[2] A "decision concerning a motion to disqualify opposing counsel will

---

[2]     *Johnson v. Aleut Corp.*, 307 P.3d 942, 947 (Alaska 2013) (citing *Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 482 (Alaska 2006)). *Accord McAlpine v. Priddle*, 321 P.3d 345, 348 (Alaska 2014) ("We 'review de novo the superior court's
(continued...)

only be reversed when it constitutes an abuse of discretion."[3] A ruling that an underlying agreement required an award of actual reasonable attorney's fees is "reviewed under the de novo standard because it involves contract interpretation."[4] "Questions of due process present constitutional issues that we review de novo."[5]

An "arbitrator's findings of both fact and law . . . receive great deference."[6] Generally "the arbitrator's findings of fact are unreviewable, even in the case of gross error,"[7] and "judicial review . . . of an arbitrator's decision is limited to issues of arbitrability."[8] "[I]n order to vacate [an] award based on the arbitrators' refusal to continue the arbitration hearing, a litigant must show that the 'arbitrators committed gross error' in determining that a 'litigant did not show sufficient cause for

---

**2** (...continued)
decision to confirm [an] arbitration award.' " (alteration in original) (quoting *State v. Pub. Safety Emps. Ass'n*, 235 P.3d 197, 201 (Alaska 2010))).

**3** *Munn v. Bristol Bay Hous. Auth.*, 777 P.2d 188, 196 (Alaska 1989). *Accord In re Estate of Adkins*, 874 P.2d 271, 272-73 (Alaska 1994) ("We review questions of attorney disqualification under the abuse of discretion standard.").

**4** *Marathon Oil Co. v. ARCO Alaska, Inc.*, 972 P.2d 595, 600 (Alaska 1999) (citing *State v. Arbuckle*, 941 P.2d 181, 184 (Alaska 1997)).

**5** *Grimmett v. Univ. of Alaska*, 303 P.3d 482, 487 (Alaska 2013) (citing *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011)).

**6** *OK Lumber Co. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1078 (Alaska 2005) (alteration in original) (quoting *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660 (Alaska 1995)).

**7** *Ahtna, Inc.*, 894 P.2d at 661 (citing *Breeze v. Sims*, 778 P.2d 215, 217 (Alaska 1989)); *accord McAlpine*, 321 P.3d at 349.

**8** *Ahtna, Inc.*, 894 P.2d at 661 (quoting *Masden v. Univ. of Alaska*, 633 P.2d 1374, 1377 (Alaska 1981)).

postponement.' "[9] We also have applied the gross error standard of review to other issues concerning arbitration management.[10]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Abuse Its Discretion When It Refused To Disqualify Gunther From The Confirmation And Vacatur Proceedings.

During the superior court confirmation and vacatur proceedings Aimee

---

[9]    *Marathon Oil Co.*, 972 P.2d at 602 (quoting *Ebasco Constructors, Inc. v. Ahtna, Inc.*, 932 P.2d 1312, 1316 (Alaska 1997)).

[10]    *See id.* ("Because AS 09.43.120(a)(4) deals generally with issues concerning the management of arbitration, it is logical to adopt the same standard of review for all alleged violations of this provision."). We recognize that our decision in *Marathon Oil* addressed Alaska's Uniform Arbitration Act (UAA), and that Aimee and Donald's agreement is subject to Alaska's Revised Uniform Arbitration Act (RUAA). Ch. 170, §§ 1-2, SLA 2004 (Alaska adopted the RUAA in 2004, and the RUAA governs arbitration agreements entered into on or after January 1, 2005.); AS 09.43.300-.595. Donald argues that "[t]he RUAA includes few substantive changes from the original UAA provisions regarding confirmation and vacatur," and he suggests "that case law decided under the UAA is equally applicable to the RUAA; or, at the very least, provides highly persuasive guidance."

Donald's arguments are persuasive. For example, the RUAA and UAA each mandate vacatur when a party's continuance request was denied despite a "showing of sufficient cause for postponement." *See* AS 09.43.500(a)(3) (mandating vacatur when "an arbitrator refused to postpone the hearing on showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to AS 09.43.420, so as to prejudice substantially the rights of a party to the arbitration proceeding"); AS 09.43.120(a)(4) (mandating vacatur when "the arbitrators refused to postpone the hearing upon sufficient cause being shown for postponement or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of AS 09.43.050, as to prejudice substantially the rights of a party"). Because the RUAA did not change or limit the policies in favor of arbitration, we apply the same deferential review of arbitration decisions that we applied under the UAA. We thus continue to review arbitration management decisions for gross error.

unsuccessfully moved to disqualify Gunther, asserting a conflict of interest and arguing that she was Gunther's former client in a substantially related matter. Aimee now argues that the court erred when it refused to disqualify Gunther.

> We have held that

> an attorney "may not represent a third party against a former client where there exists a substantial possibility that knowledge gained by him in the earlier professional relationship can be used against the former client, or where the subject matter of his present undertaking has a substantial relationship to that of the prior representation."[11]

This test is incorporated in Alaska Professional Conduct Rule 1.9(a)[12] which provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Disqualification therefore is warranted after determining that (1) the party alleging a conflict of interest is the attorney's former client and (2) the attorney represented the former client in a substantially related matter.

Rule 9.1(q) defines "substantially related matters" as "matters: (1) that involve the same transaction or the same underlying legal dispute, or (2) where there is a substantial risk that confidential factual information obtained in the prior matter would materially advance a client's position in the subsequent matter." We have explained that "[t]he substantial relationship test for determining disqualification of an attorney is a prophylactic rule which obviates the need for the former client to demonstrate that

---

[11]    *Griffith v. Taylor*, 937 P.2d 297, 301 (Alaska 1997) (quoting *Aleut Corp. v. McGarvey*, 573 P.2d 473, 474-75 (Alaska 1978)).

[12]    *See id.* at 301 n.8.

confidential information was actually disclosed in the course of the prior representation."[13] But the former client still has the burden to demonstrate "that the matters embraced within the pending suit wherein [her] former attorney appears on behalf of [her] adversary are substantially related to the matters or cause of action wherein the attorney previously represented [her], the former client."[14]

We do not decide whether Aimee is Gunther's former client because Aimee fails to establish that the superior court erred when concluding that there was no substantial relationship between Gunther's alleged representation and the confirmation and vacatur proceedings. Aimee argues that "Gunther was [her] lawyer in regard to selling the two airport properties, and subsequently purported to represent [Donald] in a case in which [Aimee] was attempting to assert an interest in those same airport properties." In the superior court Aimee asserted that she came to Gunther "for assistance in making key decisions in the leasing, pollution and environmental concerns, and management of the Barrow hangar property." Aimee supported her statement with an affidavit asserting:

> I met several times with Mr. Gunther during the five year period of the Settlement Agreement, with [Donald], to obtain legal assistance and advice on issues relating to the airport properties. At the time, and to this day, I believed that I was consulting with Mr. Gunther as a lawyer in his professional capacity. At the time I participated proactively in the meetings, and manifested my intention to seek professional legal advice from Mr. Gunther. At the time I consulted with Mr. Gunther I had a legal and equitable interest in the airport properties, and considered him to be my attorney vis-á-vis those properties.

---

[13]     *Id.* at 301.

[14]     *Aleut Corp.*, 573 P.2d at 475 (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953)) (internal quotation marks omitted).

But Aimee fails to demonstrate how her alleged attorney-client relationship with Gunther, and the matters allegedly discussed, were substantially related to the superior court confirmation and vacatur proceedings. She does not argue, nor does it appear from the record, that her alleged participation in the hangar lease negotiations was related in any way to the legal dispute raised in her allegations that Donald and the businesses breached the settlement agreement. And Aimee's superior court claims were even further removed from her alleged interaction with Gunther — her superior court arguments were based on the arbitrator's procedural decisions, not on the leasing, management, or even sale of the airport properties.

Finally, Aimee fails to establish that there was any "substantial risk that confidential factual information obtained in the prior matter would materially advance a client's position in the subsequent matter."[15] Aimee asserts that the subject matter of her meetings with Gunther and the subject matter of the arbitration dispute were identical, i.e., "what needed to be done with two airport properties in which both parties had an interest." Aimee does not need to establish that Gunther received confidential information,[16] but she must establish a substantial risk that he did. Aimee fails to explain why her involvement and interaction with Gunther during lease negotiations with an outside party created a substantial risk that she had revealed confidential information relevant to her subsequent application for the superior court to vacate the arbitrator's decision based on alleged procedural errors. And Aimee did not establish that her interactions with Gunther — dealing with unrelated litigation and lease negotiations — were related to her domestic partnership or breach of contract theories. Because Aimee failed to satisfy her burden of explaining or establishing a substantial risk that Gunther

---

[15]     Alaska R. Prof. Conduct 9.1(q)(2).

[16]     *See Griffith*, 937 P.2d at 301.

-11-                                                                                          7017

received confidential information, the superior court did not abuse its discretion when denying her disqualification request.

**B.      The Arbitrator's Denial Of Aimee's Disqualification Request Was Not Gross Error.**

Aimee asserts that the arbitrator committed gross error when concluding that Aimee and Gunther did not have an attorney-client relationship and when concluding that Aimee did not consult Gunther on a substantially related matter.  A preliminary issue not explicitly raised by the parties is the arbitrator's authority to determine whether Gunther had a conflict of interest.[17]

Courts that have addressed this issue are split.  Some courts have held that attorney disqualification issues are outside arbitrators' jurisdiction, concluding that public policy dictates reserving such decisions for courts.[18]  And it may be inappropriate

---

[17]      In her opening brief Aimee asserts that the arbitration award should be vacated under AS 09.43.500(4).  AS 09.43.500(4) provides for vacatur when "an arbitrator exceeded the arbitrator's powers."  But Aimee never develops this argument and never explicitly argues that an arbitrator is not authorized to determine whether a lawyer has a conflict of interest.  And because Aimee is the party who brought the disqualification issue to the arbitrator; never disputed the arbitrator's authority to make this decision; never sought a stay of the proceedings to bring the issue before a superior court; and has not raised the issue to us, we do nothing more than identify the issue for future cases.

[18]      *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin*, 766 N.Y.S.2d 1, 6 (N.Y. App. Div. 2003) ("Another matter 'intertwined with overriding public policy considerations' and therefore beyond the reach of the arbitrators' discretion is the disqualification of an attorney from representing a client. . . .  [I]ssues of attorney disqualification involve interpretation and application of the Code of Professional Responsibility and Disciplinary Rules and cannot be left to the determination of arbitrators selected by the parties themselves for expertise in the particular industries in which they are engaged." (quoting *Bidermann Indus. Licensing v. Avmar N.V.*, 570 N.Y.S.2d 33, 34 (N.Y. App. Div. 1991))); *Dean Witter Reynolds, Inc. v. Clements,*
(continued...)

for arbitrators to address disqualification issues because they arguably present substantive disputes between one party to the arbitration and their alleged former counsel — a party who has not agreed to arbitrate the dispute.[19] Other courts, noting that "[t]he law provides an opportunity for judicial review of arbitration decisions," have narrowly construed the public policy exception,[20] concluding that attorney disqualification decisions are procedural decisions for arbitrators to make consistent with the policy of encouraging arbitration as a speedy alternative to litigation.[21]

Donald and Aimee's settlement agreement provided:  "In the event of any dispute, claim or question arising under this Agreement, or related hereto, . . . .  [T]hen either party shall have the right to submit the matter to the American Arbitration Association . . . for arbitration under its Commercial Arbitration Rules . . . ."  We have

---

[18]     (...continued)
*O'Neill, Pierce & Nickens, L.L.P.*, No. H-99-1882, 2000 WL 36098499, at \*5 (S.D. Tex. Sept. 8, 2000) ("[O]verarching policy considerations preclude arbitrators, who are often non-lawyers, from interpreting and applying the applicable rules of professional conduct for attorneys.").

[19]     *Dean Witter Reynolds, Inc.*, 2000 WL 36098499, at \*4 ("[Appellee] characterizes the disqualification dispute as nothing more than a matter of [one party's] choice of counsel in the underlying . . . arbitration.  However, at its core, the disqualification dispute lies between [the alleged client] and [the lawyer], not between [the parties to the arbitration].").

[20]     *SOC-SMG, Inc. v. Day & Zimmermann, Inc.*, No. 5375-VCS, 2010 WL 3634204, at \*3 (Del. Ch. Sept. 15, 2010).

[21]     *See, e.g.*, *id.* ("Just as a trial judge should deal in the first instance with alleged discovery abuses or attorney misconduct in cases before her, so should an arbitration panel."); *Canaan Venture Partners, L.P. v. Salzman*, No. CV 950144056S, 1996 WL 62658, at \*3 (Conn. Super. Jan. 28, 1996) ("This court will not interfere with and interrupt the process of arbitration . . . .  Furthermore, the public policy exception is to be construed narrowly, and . . . attorney disqualification is not within the scope of the exception.").

emphasized a "strong [public] policy favoring arbitration and our rule of construction allowing even ambiguous contract terms to be construed in favor of arbitrability."[22] But because neither party has ever explicitly argued that the attorney disqualification issue was not subject to arbitration — thereby tacitly accepting the arbitrator's jurisdiction to address the issue — we do not need to decide in this case whether disqualification is an arbitrable issue.

The arbitrator did not grossly err when denying the disqualification motion. The arbitrator found that Aimee's motion was filed well after the deadline for motions and that Aimee failed to adequately justify her late-filed motion when she knew two months earlier that Gunther would participate in the arbitration. The arbitrator also found the timing of Aimee's disqualification motion "suspect." On appeal Aimee fails to argue that either finding was obvious and significant error. Under our deferential standard of review, these findings alone are sufficient to affirm the arbitrator's decision denying the disqualification motion.

Aimee argues that the arbitrator grossly erred when finding no substantial relationship between Gunther and Aimee's prior interactions and the issues addressed in the arbitration. The arbitrator found that Aimee and Gunther "in fact met regarding the airport properties." But the arbitrator distinguished (1) Aimee providing "a factual basis affidavit dealing with issues involved in [a different] litigation," and (2) discussing a potential lease of one of the hangar properties, from Aimee and Donald's settlement agreement and Aimee's ownership claims. The arbitrator noted that Aimee:

> does not specifically mention nor does she state any
> discussion she might have had with Gunther that dealt with

---

    **22**    *Lexington Mktg. Grp., Inc. v. Goldbelt Eagle, LLC*, 157 P.3d 470, 478 (Alaska 2007) (citing *Univ. of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1138 (Alaska 1974)).

any of the issues involved in the Arbitration proceeding. A careful reading of the affidavits presented makes it clear that [Aimee's] contact with Gunther . . . did not involve any of the issues dealing with the current dispute between the parties in the Arbitration proceeding.

Aimee correctly asserts that under Alaska law she is not required to show that confidential information was disclosed in order to disqualify Gunther.[23]  But the arbitrator did not mandate a showing of a confidential disclosure.  Rather, the arbitrator noted that Aimee failed to establish that her prior interactions with Gunther addressed any of the disputed issues in the arbitration.  Aimee's briefs in this appeal and her citations to the record similarly fail to establish that Aimee's discussions with Gunther involved any of the same issues — i.e., the alleged domestic partnership and alleged breach of the settlement agreement — that the parties disputed in the arbitration.

Because Aimee does not dispute the arbitrator's finding that her motion was untimely filed without justification, and because the arbitrator reasonably concluded that Gunther never consulted with Aimee regarding a substantially related matter, we conclude that the arbitrator did not grossly err when denying Aimee's disqualification motion.  We therefore conclude that the superior court correctly ruled that the denial was insufficient grounds for vacatur.

## C.   The Arbitrator's Denial Of Aimee's Continuance Request Was Not Gross Error.

Alaska Statute 09.43.500(a)(3) requires vacatur of an arbitration award when "an arbitrator refused to postpone the hearing on showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to AS 09.43.420, so as to prejudice substantially the rights of a party to the arbitration proceeding."  We have explained that "the party

---

[23]     *See supra*, page 11.

challenging [an arbitration] award bears the burden of proof,"[24] and we have noted that "[c]ourts have rejected most claims that an arbitration proceeding should be vacated because of an arbitrator's refusal to postpone the hearing."[25]

Aimee argues that the inclusion of Donald's businesses in the arbitration complicated the proceedings. Aimee asserts she showed good cause for postponement because she needed time to put together a case establishing her domestic partnership theory or to show that she was owed much more deferred compensation than she had received. Aimee also argues that the need to appraise the airport properties was good cause for the continuance because (1) "[t]he gravamen of [Aimee's] claim [was] that the airport hangar properties were never properly valued at the time of the negotiations leading to the Settlement Agreement" and (2) the properties' value was necessary for the arbitrator's determination "whether the Settlement Agreement was breached, was rescinded, expired, or was never fully integrated in the first place, and what remedy would be most fair and equitable to the parties."

When denying Aimee's motion to continue, the arbitrator noted that the arbitration had been continued twice before: first, upon the parties' stipulation the arbitration had been continued from early December 2012 until late January 2013, and second, a week after Aimee first moved to continue, before the arbitrator issued a decision on the continuance motion, the arbitration was continued for two weeks due to Aimee's counsel's illness. The arbitrator's order denying the continuance also noted that the gravamen of Aimee's original claim was an alleged breach of the settlement agreement, that Aimee sought "half of the . . . fair market value of the two airport

---

[24] *City of Fairbanks Mun. Utils. Sys. v. Lees*, 705 P.2d 457, 461 (Alaska 1985).

[25] *Ebasco Constructors, Inc. v. Ahtna, Inc.*, 932 P.2d 1312, 1316 n.1 (Alaska 1997).

properties," and that Aimee's arbitration notice recognized that "[q]uantification of the [fair market value] is complex, and likely to be controversial."

The arbitrator found that Aimee's motion to continue was "clearly untimely" and that Aimee failed to advance a "just reason" for the late motion. Explaining that arbitration helps "resolve disputes privately, promptly, and economically," the arbitrator found that "it is clear that [Aimee] knew from the beginning of this arbitration process that the fair market value of the property was an issue that she had raised by her pleadings" and that "a continuance of the arbitration would delay the final resolution of the dispute between the parties and would defeat the primary benefit of arbitration."

The arbitrator's denial did not address Aimee's assertions that a continuance was warranted because addition of the businesses complicated the arbitration and because she needed more time to gather evidence of a domestic partnership. But none of Aimee's assertions establish that the arbitrator's denial of her continuance request was obvious and significant error. First, the businesses obviously were necessary parties to the arbitration, and Aimee expressly consented to their addition and the new arbitration date. Second, in his ultimate decision the arbitrator relied on evidence in the record reflecting the parties' views on whether Aimee was due any additional deferred compensation. Third, when Aimee submitted the dispute to arbitration asserting a breach of contract, she did not explain that she planned to argue for a remedy under her domestic partnership theory.

Because the arbitrator soundly justified denying Aimee's continuance request, we conclude that the superior court correctly ruled that the denial was insufficient grounds for vacatur.

**D.** **The Superior Court Was Not Required To Sua Sponte Conduct An Evidentiary Hearing.**

Aimee did not request an evidentiary hearing during the confirmation and vacatur proceedings. But she now asserts that the superior court's failure to sua sponte conduct an evidentiary hearing was erroneous.

**1.** **No statute requires a sua sponte evidentiary hearing.**

Describing the superior court's role in confirmation and vacatur proceedings as that of "an intermediate appellate body," Aimee argues that the statute providing the superior court's appellate jurisdiction, AS 22.10.020(d), includes the requirement to conduct "hearings on appeal." Aimee then notes that she and Donald contested facts that were relevant for the superior court's confirmation and vacatur decisions. Thus, Aimee concludes that the superior court failed to hold "a hearing to see whether in fact criteria from AS 09.43.500 justified vacation . . . . [A]nd its failure to conduct any hearing whatsoever before simply confirming the award derogated its duty to properly review the arbitration's compliance with AS 09.43.500."

Aimee incorrectly classifies the superior court's action in this case as intermediate appellate review. Alaska Statue 22.10.020(d) establishes the superior court's appellate jurisdiction over matters appealed from subordinate courts and administrative agencies.[26] But the superior court does not exercise appellate jurisdiction over arbitration disputes; rather, the court exercises original jurisdiction over applications

---

[26]   *See* AS 22.10.020(d) ("The superior court has jurisdiction in all matters appealed to it from a subordinate court, or administrative agency when appeal is provided by law, and has jurisdiction over petitions for relief in administrative matters under AS 44.62.305. The hearings on appeal from a final order or judgment of a subordinate court or administrative agency, except an appeal under AS 43.05.242, shall be on the record unless the superior court, in its discretion, grants a trial de novo, in whole or in part. The hearings on appeal from a final order or judgment under AS 43.05.242 shall be on the record.").

to confirm or vacate arbitration awards.[27]  And the RUAA does not include an explicit requirement that courts conduct a hearing when addressing applications to confirm, modify, or vacate arbitration awards.[28]  We conclude that the superior court had no statutory obligation to sua sponte conduct an evidentiary hearing.  This conclusion is consistent with our precedent:  "In order to preserve the finality of arbitration awards, the superior court's function in confirming or vacating an arbitration award must necessarily be limited."[29]

---

[27]    *See Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 892 (Alaska 2013) ("The superior court is the trial court of general jurisdiction, with *original jurisdiction* over civil matters. . . .  Unquestionably, the superior court initially had subject matter jurisdiction to determine whether the arbitration award was valid. (footnote omitted) (emphasis added)); AS 22.10.020(a).

In asserting that superior court confirmation and vacatur proceedings must include evidentiary hearings because the court must resolve factual disputes while conducting intermediate appellate review, Aimee exhibits confusion about the difference between oral argument and an evidentiary hearing.  We have explained that oral argument addresses legal propositions while evidentiary hearings address relevant factual disputes.  *See Stinson v. Holder*, 996 P.2d 1238, 1242 (Alaska 2000) ("[I]t was necessary to conduct an evidentiary hearing to allow testimony about Stinson's mental state and to find facts about his competence at relevant times.  The superior court had discretion to decide whether to hear oral argument on Stinson's motion, and it could well have decided that oral argument on the legal propositions presented was not necessary.  But it was an abuse of discretion to deny the motion without hearing and determining the relevant facts." (footnote omitted)).  Parties to an appeal may request oral argument.  Alaska R. App. P. 605.5(b).  But Aimee appears to argue for both oral argument and an evidentiary hearing, i.e., without providing a basis in law, she argues that because superior court confirmation and vacatur proceedings are intermediate appellate review and because she alleges factual disputes, she is entitled to an evidentiary hearing.

[28]    *See* AS 09.43.470, .490, .500, .510.

[29]    *Lees*, 705 P.2d at 460.

**2.** **The superior court did not violate Aimee's right to due process when confirming the arbitration award without an evidentiary hearing.**

Aimee asserts that her right to due process was violated because the superior court proceedings "involve[d] substantial property interests, and [Alaska precedent] mandates that [Aimee] was entitled to a hearing to present her case." But when a party fails to request an evidentiary hearing we will review a court's failure to sua sponte conduct an evidentiary hearing only for plain error.[30] "Plain error exists if 'an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[31] And even if Aimee had the right to an evidentiary hearing, which we do not suggest, procedural due process does not guarantee that a party will receive an evidentiary hearing on all material fact disputes because "[a] party may waive the right to an evidentiary hearing on disputed material questions of fact by failing to request one

---

[30]    *See In re Estate of Fields*, 219 P.3d 995, 1011 (Alaska 2009) ("We will consider an issue not raised below or in a statement of points on appeal if it reflects plain error, which exists if 'an obvious mistake has been made which creates a high likelihood that injustice has resulted.' We cannot conclude that the failure to sua sponte order an unrequested discretionary evidentiary hearing on the Alaska Civil Rule 60(b) motion was an obvious mistake that created a high likelihood of injustice." (footnote omitted) (quoting *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981))); *Owen M. v. State, Office of Children's Servs.*, 120 P.3d 201, 203 (Alaska 2005) ("We review [appellant's] argument for plain error because he did not ask the superior court for an evidentiary hearing on [his child's] placement. . . . [Appellant] cannot show plain error. The superior court did not make an obvious mistake in not holding an evidentiary hearing because neither the statute nor the [Child in Need of Aid R]ule explicitly requires one." (footnotes omitted)).

[31]    *Johnson v. Johnson*, 239 P.3d 393, 407 (Alaska 2010) (quoting *Estate of Fields*, 219 P.3d at 1011).

before the court rules on the matter."[32]

During the confirmation and vacatur proceedings Aimee challenged only two procedural decisions by the arbitrator. These were discretionary decisions subject to review only for gross error. As discussed above, the arbitrator explained his decisions and they were supported by the arbitration record. Because the superior court's decision to confirm the arbitration award based on the parties' applications and the arbitration record was not an obvious mistake that created a high likelihood of injustice, we conclude that Aimee's right to due process was not violated.

E. **The Superior Court Did Not Abuse Its Discretion Or Err As A Matter Of Law When Awarding Full Reasonable Attorney's Fees.**

The superior court awarded Donald and his businesses full reasonable attorney's fees for the confirmation proceedings. The court explained that the "award of actual reasonable attorney['s] fees and cost[s] in this case is mandated by the November 2005 Settlement Agreement. Even if the Settlement Agreement did not mandate an award of such costs and fees, they are independently appropriate pursuant to Civil Rule 82(b)(3) and the policy favoring arbitration." The court supported its independent Rule 82 conclusion with findings that "[Aimee's] case was largely frivolous and devoid of merit. [Aimee] showed a remarkable use of untrue and misleading facts. [Aimee] engaged in an unfounded campaign to damage the personal and business reputations of [Donald] and [his businesses]."

Focusing on the superior court's findings, Aimee argues that awarding the fees without an evidentiary hearing violated her right to due process and that the fee award was unreasonable. But Aimee ignores the superior court's first basis for the attorney's fees award: The court concluded that the award "is mandated by the

---

[32]     *DeNardo v. Maassen*, 200 P.3d 305, 315 (Alaska 2009) (citing *Corbin v. Corbin*, 68 P.3d 1269, 1274 (Alaska 2003)).

November 2005 Settlement Agreement."  Rule 82(a) provides: "Except as otherwise provided by law *or agreed to by the parties*, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule."  (Emphasis added.)

The settlement agreement provided for a full reasonable attorney's fees award made to the prevailing party in arbitration and explained that "[t]he decision and award of the arbitrator shall be final and binding upon the parties and non-appealable." The settlement agreement also included the following provision: "In the event that either party shall without fault on its part be made a party to any litigation commenced by or against the other, then such party shall pay all costs and reasonable actual attorneys fees incurred or paid by such party in connection with such litigation."  In her briefing Aimee does not dispute the superior court's conclusion that the settlement agreement mandates a full reasonable attorney's fees award.  Therefore we do not need to consider Aimee's arguments under Rule 82.

Aimee does argue that the attorney's fees award was unreasonable.  When determining whether attorney's fees are reasonable courts "often focus[] on two factors: (1) the hourly rate charged and (2) the number of hours reported."[33]  But Aimee's argument focuses on neither of these factors.  Rather than asserting that Donald's and the businesses' lawyers spent an unreasonable amount of time or billed an unreasonable amount per hour, Aimee focuses only on whether it was reasonable to award full attorney's fees at all.  "[T]he trial court is in the best position to determine reasonableness as 'it has knowledge of the case that the reviewing court lacks' and '[t]he trial court's greater knowledge of the case makes it uniquely suited to [determine

---

[33]     *Okagawa v. Yaple*, 234 P.3d 1278, 1281-82 (Alaska 2010).

reasonable actual attorney's fees] quickly, accurately, and fairly.' "[34] We conclude that the amount awarded was not an abuse of discretion.

Aimee finally argues that the superior court, when awarding attorney's fees without holding oral argument or an evidentiary hearing, violated her right to due process. But Aimee never requested any kind of in person hearing on the issue of attorney's fees, and she cannot dispute that she had the opportunity to be heard during the motion practice by submitting her opposition to the requests for attorney's fees.

Because the superior court properly awarded attorney's fees based on the settlement agreement and because Aimee never requested, nor was she necessarily entitled to, an evidentiary hearing or oral argument on the reasonableness of the fees, we conclude that the superior court did not err in its attorney's fees award.

## V. CONCLUSION

We AFFIRM the superior court's decisions confirming the arbitration award and awarding Donald and the businesses their actual reasonable attorney's fees for the confirmation proceeding.

---

[34] *Id.* at 1282 (second two alterations in original) (quoting *Valdez Fisheries Dev. Ass'n v. Froines*, 217 P.3d 830, 833 (Alaska 2009)).